**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8980 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation, | ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Lijana Shestopal ("Plaintiff") brings this Class Action Complaint against Defendant Follett Higher Education Group, Inc. ("Follet"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.    NATURE OF THE ACTION

1.    Defendant Follett is a company that provides education technology services and educational content to schools, colleges, and public libraries.[1] In addition, Follet offers products and services, such as books and school supplies, to students attending higher education facilities. In an effort to market its products and services, Follet sent (or directed to be sent on its behalf) unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

---

[1] Follett Corporation, About Us, https://www.follett.com/about-company (last visited September 3, 2015).

2.     Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Follet to send text messages to their wireless telephones.

3.     By sending such unauthorized text messages, Follet caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4.     In order to redress these injuries, Plaintiff seeks an injunction requiring Follet to cease all unsolicited text message activities, an award of statutory damages to the Class members under the TCPA, and an award for damages for conversion, together with costs and reasonable attorneys' fees.

## II.     JURISDICTION AND VENUE

***Subject Matter Jurisdiction***

5.     This Court has original jurisdiction over Count I, pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

6.     The Court has supplemental jurisdiction over Count II, pursuant to 28 U.S.C. § 1367, because it arises out of the same case or controversy as Count I.

***Personal Jurisdiction***

7.     The Court has personal jurisdiction over Defendant Follet because Follet is located in and conducts business within the State of Illinois.

***Venue***

8.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1), because Follet resides in this District. By regularly conducting business in this District, Follet is subject to this Court's personal jurisdiction.

9.       Further, venue is proper, pursuant to § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

### III.   PARTIES

*Plaintiff*

10.       Plaintiff Lijana Shestopal is an individual domiciled in Cook County, Illinois.

*Defendant*

11.       Defendant Follet is a corporation organized in and existing under the laws of the State of Illinois with its principal place of business located at 3 Westbrook Corporate Center, Suite 200, Westchester, Illinois 60154.

12.       Follet maintains a registered agent, C T Corporation System, located at: 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

### IV.   FACTUAL BACKGROUND

*Background on Unsolicited SMS Activity*

13.       In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

14.       One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

15.       SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are

inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

16.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

17.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

18.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

19.     As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express *written* consent.

### *Defendant's Unsolicited SMS Message Advertisement to Plaintiff*

20.     As part of its advertising campaign, Defendant Follet has sent and continues to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

21.     On or about August 26, 2015, Follet transmitted the following text message to Plaintiff's wireless phone:

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited September 3, 2015).
[3] *Id.*

-4-





22.     The message fails to state the identity of the sender as required by 47 C.F.R. §64.1200(b)(1).

23.     The message fails to state clearly the telephone number of the sender as required by 47 C.F.R. §64.1200(b)(2).

24.     The message fails to provide an opt-out mechanism as required by 47 C.F.R. §64.1200(b)(3).

25.     The "from" field of the transmission was identified as 839-825.

26.     Follet and its agents use the short code 839-825 to send text messages.

27.     When entered into an Internet browser, the website address "bit.ly/1hcy7Bo" redirects the recipient of the text message to a website where the recipient can enter into a contest and complete a survey by filling out a form. (*See* Exhibit A.)

28.     Follet is the sponsor of the contest and conductor of the survey.

29.    In the form, Follet asks visitors of the website if they want to receive occasional emails and text messages from Follet and its associates. (*Id.*)

30.    In addition, the contest's Official Rules enable Follet and its agents to contact contestants in order to offer products or services and or to contact the contestants for other promotional purposes. (*See* Exhibit B.)

31.    The Official Rules also enable Follet and its agents to contact contestants as permitted by Follet's Privacy Policy. (*Id.*)

32.    In its Privacy Policy, Follet states that it collects information from persons who use its Services in order to: (a) allow such persons to participate in features offered by Follet; (b) tailor content, recommendations, and offers that Follet displays or otherwise provides to such persons; and (c) provide such persons with information about products or services that Follet believes will interest such persons, including advertisements or special offers, either on its behalf or on behalf of third parties. (*See* Exhibit C.)

33.    In the form, Follet also asks recipients to complete a survey regarding the recipient's preferences for textbooks, apparel, supplies, snacks, gifts, and other items purchased at school campus stores.

34.    Follet offers products and services related to items purchased at school campus stores, including textbooks, apparel, supplies, snacks, and gifts.

35.    Follet uses the responses to the survey questions to develop marketing strategies and to determine what advertising material to send to potential customers.

36.    Accordingly, Follet uses its contest and survey as pretext to solicit goods and services.

37.     Follet sent or transmitted, or had sent or transmitted on its behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

38.     On information and belief, Follet sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

39.     Plaintiff never consented to in writing, requested, or otherwise desired or permitted Follet to send or transmit text messages to her wireless phone.

## V.     CLASS ALLEGATIONS

40.     Plaintiff brings this action, as set forth below, on behalf of herself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States to whose wireless telephones Defendant, or someone on its behalf, sent a non-emergency, unsolicited text message through the use of an automatic dialing system, at any time within the four years prior to the filing of this action. (the "Class").

Excluded from the Class are Follet and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

41.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by Follet's

wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Follet's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

43. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

     a. the manner in which Follet obtained Plaintiff's and the Class' wireless telephone numbers;

     b. whether the equipment Follet used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

     c. whether Follet's conduct constitutes a violation of the TCPA;

     d. whether Follet's conduct constitutes conversion;

     e. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

     f. whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Follet's conduct; and

     g. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

44. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

45. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to

prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

46. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Follet has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

47. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Follet, so it would be impracticable for Class members to individually seek redress for Follet's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of the Class)

48.     Plaintiff incorporates by reference paragraphs 1-47 as if fully set forth herein.

49.     Defendant Follet and/or its agents sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

50.      Follet sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

51.     Follet utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

52.     By sending the unsolicited text messages to Plaintiff and the Class, Follet has violated 47 U.S.C. § 227(b)(1)(A)(iii).

53.     As a result of Follet's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

54.     Should the Court determine that Follet's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## COUNT II
### Conversion
### (On behalf of the Class)

55.     Plaintiff incorporates by reference paragraphs 1-47 as if fully set forth herein**.**

56.     By sending texts to Plaintiff's and the other Class members' wireless telephones, Follet converted to its own use data usage under Plaintiff's and the other Class members' wireless telephone plans and components of Plaintiff's and the other Class member's wireless telephones.

57.     This loss of use constitutes an asset of economic value paid for by Plaintiff and the other Class members when they acquired their wireless telephones and subscribed for wireless telephone service.

58.     Immediately prior to the sending of the texts, Plaintiff and the other Class members owned and had an unqualified right and immediate right to the possession of wireless telephones and the data service under their wireless telephone plans used to receive Follet's text messages.

59.     By sending texts (or directing texts to be sent on its behalf), Follet appropriated to its own use the data usage and wireless telephones used to receive the texts in such a manner as to make them unusable or decrease their performance. Such appropriation was wrongful and without authorization.

60.     Follet knew or should have known that such appropriation of the data usage and phone components was wrongful and without authorization.

61.     Plaintiff and the other Class members were deprived of the data usage and performance of their wireless telephones, which could no longer be used for any other purpose.

62.     Accordingly, Plaintiff and the other Class members suffered damages as a result of the receipt of the texts.

## VII.      JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.      REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lijana Shestopal, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A.      Certifying the Class as defined above, appointing Plaintiff Lijana Shestopal as the representative of the Class, and appointing her counsel as Class Counsel;

B.      Awarding of actual and statutory damages;

C.      Requiring Follet to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.      Awarding of reasonable attorneys' fees and costs; and

E.      Awarding such other and further relief that the Court deems reasonable and just.

Dated: October 9, 2015

Respectfully submitted,

By: */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**S**IPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

***Counsel for Plaintiff***
***and the Proposed Putative Class***

4813-9384-4776, v. 1

-12-