**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8980 |
| v. | ) ) | Hon. William T. Hart |
| FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation, | ) ) ) | Hon. Jeffrey Cole |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

***Counsel for Plaintiff***
***and the Proposed Settlement Class***

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ..........................................................................................................................5

    I.      THE PROPOSED SETTLEMENT ..............................................................5

              A.  Certification Of The Proposed Class ..............................................5

              B.  Class Relief ....................................................................................5

              C.  Class Notice ...................................................................................6

              D.  Incentive Award To Class Representative .......................................7

              E.  Attorneys' Fees And Expenses ......................................................8

    II.     THE PROPOSED SETTLEMENT IS FAIR
            AND SHOULD BE PRELIMINARILY APPROVED ...................8

              A.  Strength Of The Case Balanced Against The Settlement .................9

              B.  The Risk, Expense, & Complexity Of The Case ...........................11

              C.  The Opinion Of Counsel ..............................................................12

              D.  The Extent Of Discovery ..............................................................12

              E.  The Presence Of Governmental Participants ................................14

    III.    THE SETTLEMENT CLASS SHOULD
            BE PROVISIONALLY CERTIFIED; THE FORM
            AND METHOD OF NOTICE TO THE CLASS MEMBERS
            SHOULD BE APPROVED; AND, A HEARING REGARDING
            FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED ........14

              A.  The Class Should Be Provisionally Certified ...............................14

                    1.  Numerosity – F.R.C.P. 23(a) .............................................15

                    2.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3) ..............16

                    3.  Typicality – F.R.C.P. 23(a)(3) ...........................................18

                    4.  Adequacy Of Representation – F.R.C.P. 23(a)(4)...............19

                    5.  Superiority – F.R.C.P. 23(b)(3) .........................................19

               B.  The Form And Method Of Service Of Class Notice Should Be Approved.....20

               C.  The Court Should Schedule A Hearing For Final Settlement Approval .........23

    CONCLUSION .................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................... 14, 15, 20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................... 21

*Nicaj v. Shoe Carnival, Inc.*,
    135 S. Ct. 1429 (2015)................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................. 16

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ......................................................................... 8

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
    747 F.3d 489 (7th Cir. 2014) ....................................................................... 15

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ....................................................................... 17

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ....................................................................... 20

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ....................................................................... 10

*In re Corrugated Container Antitrust Litigation*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................... 13

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) .................................................................. 17, 18

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ......................................................................... 8

*Marcial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989) ....................................................................... 15

*Murray v. GMAC Mortg. Corp.,*
  434 F.3d 948 (7th Cir. 2006) ........................................ 11

*Patterson v. Gen. Motors Corp.,*
  631 F.2d 476 (7th Cir. 1980) ........................................ 16

*Redman v. RadioShack Corp.,*
  768 F.3d 622 (7th Cir. 2014) ......................................... 8

*Rosario v. Livaditis,*
  963 F.2d 1013 (7th Cir. 1992) ...................................... 16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ......................................... 9

*Swanson v. Am. Consumer Indus., Inc.,*
  415 F.2d 1326 (7th Cir. 1969) ...................................... 15

*Szabo v. Bridgeport Machines, Inc.,*
  249 F.3d 672 (7th Cir. 2001) ....................................... 15

*Williams v. Chartwell Fin. Serv., Ltd.,*
  204 F.3d 748 (7th Cir. 2000) ....................................... 14

*Wong v. Accretive Health, Inc.,*
  773 F.3d 859 (7th Cir. 2014) ......................................... 9

**UNITED STATES DISTRICT COURT CASES**

*A & L Indus., Inc. v. P. Cipollini, Inc.,*
  No. 12–07598 (SRC), 2014 WL 906180 (D.N.J. Mar. 7, 2014)........................................ 23

*Bayat v. Bank of the West,*
  No. C-13-2375 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................ 11

*Birchmeier v. Caribbean Cruise Line, Inc.,*
  302 F.R.D. 240 (N.D. Ill. 2014).................................... 11

*Fletcher v. ZLB Behring LLC,*
  245 F.R.D. 328 (N.D. Ill. 2006)..................................... 17

*Gehrich v. Chase Bank USA, N.A.,*
  No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ........................... 10, 12, 13, 15

*Gomez v. Ill. State Bd. of Educ.,*
  117 F.R.D. 394 (N.D. Ill. 1987).................................... 19

*Gress v. Premier Healthcare Exchange, Inc.*,
    No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) .................................................... 11

*Hedges v. Earth Inc.*,
    No. 14-cv-9858, 2015 WL 10853985 (N.D. Ill. Oct. 14, 2015) ...................................... 22

*Hinman v. M & M Rental Ctr., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................. 19

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)................................................................................. 9, 22

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d. 935 (N.D. Ill. 2011) ............................................................................. 22

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ................................................................. 11, 22

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09-cv-03690, 2014 WL 1017515 (N.D. Ill. Mar. 17, 2014) ...................................... 22

*In re Nat'l Collegiate Athletic Ass. Student-Athlete Concussion Injury Litig.*,
    314 F.R.D. 580 (N.D. Ill. 2016)..................................................................................... 22

*In re Neopharm, Inc. Secs. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004)..................................................................................... 18

*Kessler v. Am. Resorts Int'l*,
    No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)........................................... 9

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)................................................................................ 11, 12

*Maxwell v. Arrow Fin. Servs., LLC*,
    No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ........................................... 15

*Pope v. Harvard Banchares, Inc.*,
    240 F.R.D. 383 (N.D. Ill. 2006)..................................................................................... 16

*Radmanovich v. Combined Ins. Co. of Am.*,
    216 F.R.D. 424 (N.D. Ill. 2003)..................................................................................... 18

*Scholes v. Stone, McGuire, & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992)..................................................................................... 16

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ 12, 13

*Smith v. Nike Retail Servs., Inc.,*
    234 F.R.D. 648 (N.D. Ill. 2006) ..................................................................... 15

*Wilkins v. HSBC Bank Nevada, N.A.,*
    No. 14 C 190, 2015 WL 980566 (N.D. Ill. Feb. 27, 2015) .............................. 11

*Whitten v. ARS Nat'l Servs. Inc.,*
    No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ......................... 17

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1715 ............................................................................................ 7, 14

47 U.S.C. § 227 ..................................................................................................... 1

Fed. R. Civ. P. 23 ........................................................................................... *passim*

## OTHER AUTHORITIES

Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,
    Federal Judicial Center (2010) ....................................................................... 22

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ..................................... 13, 14, 23

NEWBERG ON CLASS ACTIONS (Fourth) (2001) ..................................................... 15

NEWBERG ON CLASS ACTIONS (Fourth) (2002) ................................................. 16, 20

## **EXHIBIT LIST**

Settlement Agreement...................................................................................................................1

Declaration Of Joseph J. Siprut ..................................................................................................2

Pursuant to Fed. R. Civ. P. 23, Plaintiff Lijana Shestopal ("Plaintiff"), by her counsel, respectfully submits the following Motion For Preliminary Approval Of Class Action Settlement, and moves for an Order: (1) preliminarily approving the Agreement[1] as being fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Class Notice; (3) setting the date and time of the Final Approval for no earlier than 180 days from the date preliminary approval is granted; (4) provisionally certifying the proposed Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only (the "Class"); (5) provisionally appointing Plaintiff as representative of the Class; and (6) provisionally appointing Joseph J. Siprut and Siprut PC as Class Counsel.

## **INTRODUCTION**

Plaintiff and Defendant Follett Higher Education Group, Inc. ("Defendant" or "Follett") have entered into a Settlement Agreement (the "Settlement Agreement" or "Settlement" or "Agreement") in the above-referenced matter. (Exhibit 1 attached hereto.) The Settlement Agreement—a product of discovery over the course of over half a year and a mediation with Judge James F. Holderman—settles the dispute relating to Plaintiff's allegation that Follett sent unsolicited text messages to Plaintiff and the Class in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for Settlement Class Members. The relief achieved by the Settlement is an "all-in," non-reversionary, common fund in the amount of *$3,500,000*—cash (the "Settlement Fund"). All Class Members who submit an Approved Claim will be paid cash out of the Settlement Fund. Class Counsel estimates that if 5% of the Settlement Class submit valid and timely claim forms,

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached hereto as Exhibit 1.

each such Settlement Class Member will receive approximately $20.68. The Settlement Administration Expenses, attorneys' Fee Award, and Plaintiff's Incentive Award will be deducted from the Settlement Fund prior to the *pro rata* payments to the Class Members. The Settlement also provides that the best practicable notice be provided to Class Members, and calls for the designation of a reputable and competent professional Settlement Administrator to disseminate notice of and administer the Settlement.

This result is best appreciated in light of Follett's asserted defenses. Follett not only had numerous defenses that could have defeated the Settlement Class Members' claims, but also raised a potential arbitration claim that could have precluded litigation altogether. While Plaintiff remains confident that, if litigation were to continue, she could overcome Follett's asserted defenses, Plaintiff nevertheless recognizes the risk to her and, more importantly, the Class if Plaintiff were unsuccessful. Moreover, the Parties were only able to reach the Settlement with the assistance of the respected and experienced JAMS mediator, the Hon. James F. Holderman (Ret.).

In sum, although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative Class, and Follett to resolve this action on the terms provided in the attached Agreement. Accordingly, and for reasons further detailed below, Plaintiff and Class Counsel request that this Court enter an order preliminary approving this Settlement.

## **BACKGROUND**

On October 9, 2015, Plaintiff brought a putative class action against Follett in the United States District Court for the Northern District of Illinois (the "Court"), case number 1:15-cv-8980, alleging causes of action against Follett for purportedly sending unsolicited text messages

to Plaintiff's wireless telephone and to the wireless telephones of the putative class members without their prior express written consent. (Dkt. No. 1.)

On December 1, 2015, Follett filed its Answer to Plaintiff's Complaint, denying that Follett had violated the TCPA and common law. (Dkt. No. 14.) Follett also raised a number of affirmative defenses, including failure to state a claim, failure to establish Article III standing, violation of due process, and that its text messages were not, under the TCPA, "advertisements." (*Id.*) Follett also contended that Plaintiff and Class Members consented to the text messages at issue, and are also subject to an arbitration agreement. (*Id.*)

Between December 2015 and March 2016, the Parties exchanged substantial information regarding Plaintiff's claims and Follett's defenses, including but not limited to Plaintiff's and other proposed class members' alleged consent to receive text messages from Follett and agreement to arbitrate, the nature and scope of Follett's text messaging practices, and the size of the putative class. (Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 2, ¶8.)

On March 8, 2016, the Parties held a mediation with Retired District Judge James F. Holderman at the office of JAMS located at 71 South Wacker Drive, Suite 3090, Chicago, Illinois 60606. (*Id.* ¶9.) Prior to the mediation, the Parties exchanged written mediation statements summarizing their respective positions as to the factual and legal issues in the Action. (*Id.*) In addition, Follett presented financial information that is material to the Parties' Agreement. (*Id.*) After a full day of mediation and only with Judge Holderman's assistance, the Parties agreed to a Settlement Term Sheet which set forth the material terms of an agreement to resolve the claims of Plaintiff and the proposed putative class. (*Id.* ¶10.) As part of the Settlement Term Sheet, the Parties agreed to engage in reasonable confirmatory discovery

regarding the class size, date and number of text messages sent, identity of class members, method of transmitting text messages, and Follett's financial solvency. (*Id.*)

Between April 2016 and July 2016, Follett produced confirmatory discovery in the form of hundreds of documents amounting to over 10GB of raw data, and hired an outside vendor to conduct extensive data analysis in order to determine the size of the class and the number of text message sent. (*Id.* ¶12.) Based on the analysis, Class Counsel estimates that, between October 9, 2011 and December 24, 2015, approximately 1,360,561 unique mobile telephone numbers were sent text messages by Follett. (*Id.*) Additionally, approximately 524,260 additional unique mobile telephone numbers may or may not have also received text messages from Follett, resulting in a class size of approximately 1,884,821 individuals. (*Id.*) The Parties have discovered postal and e-mail address records of a majority of these individuals. (*Id.*)

Based on these results, the Parties engaged in numerous settlement negotiations between June 2016 and September 2016 in order to finalize the terms of the Settlement Agreement. (*Id.* ¶13.) After many exchanges of drafts and edits, and numerous conference calls, the Parties were finally able to agree to the form and content of a settlement agreement in August 2016 that has now been fully executed. (*Id.*)

Additionally, in August 2016, in order to determine the best practicable manner of effecting notice to the Class, Class Counsel requested the Settlement Administrator also analyze the confirmatory discovery. (*Id.* ¶14.) Based on the Settlement Administrator's recommendations, the Parties engaged in substantive negotiations to structure a notice plan consistent with Rule 23(c)(2)(B). (*Id.*)

Plaintiff now moves for preliminary approval of the Settlement Agreement that would allow each Class Member to submit a claim for a *pro rata* share of the Settlement Fund, after the

deduction of Settlement Administration Expenses, an attorneys' Fee Award, and Plaintiff's

Incentive Award. Plaintiff requests that the Court conditionally certify the Settlement Class set

forth in the Settlement Agreement.

## <u>ARGUMENT</u>

**I.     THE PROPOSED SETTLEMENT.**

The proposed Settlement provides the following:

**A.     Certification Of The Proposed Class.**

The Plaintiff requests that the Court, for the purposes of settlement, certify a Class

defined as:

> All individuals in the United States to whose wireless telephones Defendant, its
> affiliates, subsidiaries, or someone on one of their behalves, sent a nonemergency
> text message through the use of an automatic telephone dialing system, from
> October 9, 2011, up to and including December 24, 2015.

**B.     Class Relief.**

The Settlement establishes the following relief for Class Members:

- **Cash Awards Available To All Settlement Class Members.** Each
  Settlement Class Member who submits an Approved Claim, shall receive
  one *pro rata* share of the $3,500,000 Settlement Fund, after the Settlement
  Administration Expenses (approximately $499,000), Plaintiff's requested
  attorneys' Fee Award (35% of the Settlement Fund after Settlement
  Administration Expenses and the Incentive Award have been deducted,
  approximately $1,049,300) and Class Representative Incentive Award
  (approximately $3,000) have been deducted from the Settlement Fund (the
  "Net Settlement Fund"). Assuming the Net Settlement Fund is $1,948,700,
  Class Counsel estimates that if 5% or 10% of Class Members submit
  Approved Claims, each said Class Member will receive approximately
  $20.68 or $10.34 respectively.

- **No Reversion.** In the event that a Final Approval Order approving the
  Settlement Agreement is entered and the Settlement becomes Final under
  the terms of the Settlement Agreement, then under no circumstances shall
  any amount of the Settlement Fund revert back to Follett.

The Settlement is thus designed to afford relief to as many Class members as possible.

C.     **Class Notice.**

Subject to the Court granting preliminary approval of the Settlement, the Settlement Administrator will provide the Class with notice of the proposed Settlement by the following methods:

- **Direct Notice Via U.S. Mail.** Within forty-five (45) days after Preliminary Approval, the Settlement Administrator shall, based upon a review of the Notice List, disseminate the Notice and Claim Form in the form of Exhibit B to the Agreement by U.S. mail to each of the Settlement Class Members whose mailing addresses are available in the Notice List, but whose e-mail addresses are not available in the Notice List. The mailing addresses provided on the Notice List shall be run through a National Change of Address database prior to being mailed. The postage rate selected for the mailing of the Notice shall provide for notification of forwarding addresses. If the Notice is returned by the Postal Service with a forwarding address or other error that can be ascertained and corrected, then Class Counsel or the Class Administrator shall re-send by the Notice to the new address within five (5) business days.

- **Direct Notice Via Electronic Mail.** Within forty-five (45) days after Preliminary Approval, the Settlement Administrator shall, based on a review of the Notice List, disseminate the Notice in the form of Exhibit C to the Agreement by electronic mail to each of the Settlement Class Members whose e-mail addresses are available in the Notice List. If there are multiple e-mail addresses for any single Settlement Class Member, the Settlement Administrator shall send notice to each e-mail address.

- **Notice Via Print Publication.** Within forty-five (45) days after Preliminary Approval, the Settlement Administrator shall cause notice to be made by publication in *People* magazine, in the form of Exhibit D to the Agreement. The publication shall be in the form of one-quarter or one-third page advertisement.

- **Notice Via Internet Publication.** Within forty-five (45) days after Preliminary Approval, the Settlement Administrator shall cause notice to be made by publication on internet websites, in the form of Exhibit D to the Agreement, targeting adults in the United States who own a cell phone, sufficient to reach five (5) million impressions.

- **Detailed Notice Via Settlement Website.** Within forty-five (45) days after the entry of the Preliminary Approval Order, Notice in the form of Exhibit E to the Agreement shall be provided on a website at www.FollettTCPASettlement.com, which shall be administered by

Settlement Administrator. On the Settlement Website, Class Members can submit online Claim Forms.

- **Toll-Free Phone Line.** Within forty-five (45) days after Preliminary Approval, the Settlement Administrator shall establish a phone line with touch-tone and interactive voice response for individuals to learn more about the Settlement.

- **CAFA Notice.** Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall serve upon the Attorneys General of each U.S. State in which there are members of the Class, the Attorney General of the United States, and other required government officials, notice of the proposed settlement, which shall include (1) a copy of the most recent complaint and all materials filed with the complaint or notice of how to electronically access such materials; (2) notice of all scheduled judicial hearings in the Action; (3) all proposed forms of Notice to the Settlement Class; and (4) a copy of this Agreement. To the extent known, the Defendant shall serve upon the above-referenced government official the names of Class Members who reside in each respective state and the share of the claims of such members to the entire settlement, or if not feasible, a reasonable estimate of the number of Class Members residing in each state and the estimated proportionate share of the claims of such members of the entire Agreement. The costs of conducting CAFA Notice shall not be deducted from the Settlement Fund. Defendant is responsible for paying the costs of CAFA Notice separate and apart from the Settlement Fund.

In order to receive a Cash Award described above, the Settlement Class Member must submit a Claim Form within sixty days after the Notice Date. Class Members may submit their claims via mail or online at the Settlement Website. Class Members who wish to either opt-out of or object to the Settlement, must do so in accordance with the Agreement within forty-five days after the Notice Date. Within sixty days of the Effective Date, or at another time as the Court directs, the Settlement Administrator shall cause distribution of Cash Awards to the Settlement Class Members who submit Approved Claims.

**D.    Incentive Award To Class Representative.**

Subject to Court approval, the Plaintiff-Class Representative will request an Incentive Award in the amount of $3,000 in recognition of its contributions to the Settlement Class and the

risk it incurred in commencing the action, both financial and otherwise. The Court does <u>not</u> need to award or otherwise rule on Plaintiff's Incentive Award at this time. Class Counsel will file a motion for the Incentive Award, pursuant to the schedule in the Preliminary Approval Order, and will support the request for the award in detail.

> E.   **Attorneys' Fees And Expenses.**

Class Counsel will request fees and expenses in the amount of 35% of the Fund, after the Settlement Administration Expenses and the Incentive Award are deducted (approximately $1,049,300). Importantly, however, this is not a provision of the Settlement. There is no agreement on fees—*i.e.*, no "clear-sailing" provision—consistent with recent Seventh Circuit jurisprudence. *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) ("Clear-sailing clauses have not been held to be unlawful per se, but at least in a case such as this, involving a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny by the district court[.]"), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). Of course, this Settlement *is a common fund, cash* settlement and, hence, "intense critical scrutiny" is not warranted. In any event, the Court does <u>not</u> need to award or otherwise rule on Class Counsel's fees at this time. Class Counsel will file a motion for attorneys' fees separately, pursuant to the schedule in the Preliminary Approval Order, and will support the request for fees in detail.

> II.   **THE PROPOSED SETTLEMENT IS FAIR**
> **AND SHOULD BE PRELIMINARILY APPROVED.**

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("We also consider the facts 'in the light most favorable to the settlement.'"); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the

voluntary resolution of litigation through settlement."). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, No. 05 C 5944, 2007 WL 4105204, at \*5 (N.D. Ill. Nov. 14, 2007). The factors considered at this stage include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[2]

### A.  Strength Of The Case Balanced Against The Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong,* 773 F.3d at 864; *Synfuel Techs, Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006). However, "courts should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 346 (N.D. Ill. 2010) (internal quotations omitted). Moreover, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *Id.* (internal quotations omitted) Rather, the integral part of the Court's strength-versus-merits evaluation is "a consideration of the various risks and costs that accompany

---

[2] Until notice is provided, there is not an opportunity for Class Members to react to the Settlement. Hence, factors "(3)" and "(4)" are not analyzed below.

continuation of the litigation." *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985).

Plaintiff alleges that Follett violated the TCPA by sending unsolicited text messages to wireless telephone numbers. (Dkt. No. 1.) Plaintiff contends that Follett did so without the prior express invitation, permission, or consent of the recipients. (*Id.*) Plaintiff thus claims that she and the Settlement Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate. (*Id.*) Follett denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds, including failure to state a claim, failure to establish Article III standing, violation of due process, and that its text messages were not, under the TCPA, "advertisements." (Dkt. No. 14.) Follett also contends that Plaintiff and Class Members consented to the text messages at issue, and are also subject to an arbitration agreement. (*Id.*) Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

As explained above, the Settlement allows Class Members to receive direct monetary relief. While Plaintiff believes that her claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Follett were to prevail on its asserted defenses, Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a *pro rata* distribution of the Net Fund is a meaningful achievement. *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) ("As some objectors note, . . . that recovery is well below the $500 statutory recovery available for each call or text. However, the recovery falls well within the range of recoveries in other recent TCPA class actions.") (emphasis

-10-

original) (internal citations omitted); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 489 (N.D. Ill. 2015) (Kennelly, J.) ("It is true that thirty dollars per claimant is substantially less than the $500 statutory recovery available for each unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that.").[3] Accordingly, the Settlement provides a tangible benefit to all those affected by Follett's alleged violation of the TCPA.

**B.**     **The Risk, Expense, & Complexity Of The Case.**

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Follett's current and former employees, as well the employees and agents of Follett's subsidiaries, affiliates, and other third-parties. Follett intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Follett would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on whether: (a) Follett's text messages did

---

[3] Although Follett's total theoretical liability here is significant, and while "ruinous" liability is not a defense to class certification, it can, as a practical matter, affect a party's ability to collect on a judgment. *See generally Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 256 (N.D. Ill. 2014) (discussing the holding in *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006), where ruinous liability is rejected as a defense to class certification). Courts routinely approve settlements where "a total victory would threaten the defendant's ability to continue on as a viable entity." *Wilkins v. HSBC Bank Nevada, N.A.,* No. 14 C 190, 2015 WL 890566, at *5 (N.D. Ill. Feb. 27, 2015) (granting final approval of a TCPA class action settlement where the fund was $40 million but potential liability was $172 billion); *In re Capital One Tel. Consumer Prot. Act Litig.,* 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (granting final approval of TCPA class action settlement where the fund was $75.5 million but potential liability was $2.85 trillion); *Bayat v. Bank of the West,* No. C-13-2375 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) (granting final approval of TCPA class action settlement where the fund was $3.5 million but potential was $435 million); *Gress v. Premier Healthcare Exchange, Inc.,* No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) (granting final approval of TCPA class action settlement where the fund was $756,075 but potential liability was $25.9 million). "These cases properly recognize that a settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits." *Bayat,* 2015 WL 1744342, at *3.

not constitute "advertisements" under the TCPA; (b) Plaintiff and individual Class Members consented to receipt of the text messages; and (c) Plaintiff and individual Class Members are subject to an arbitration agreement. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C.    The Opinion Of Counsel.

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, at 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation. (Siprut Decl. ¶17.) *See Chase Bank*, 2016 WL 806549, at *9  ("Class Counsel are experienced TCPA litigators and strongly support the settlement. . . . this factor (whatever its weight) favors approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Based upon proposed Class Counsel's analysis and the information obtained from Follett, a *pro rata* share of the Class Fund represents a significant recovery for the Settlement Class, especially when weighed against Follett's anticipated defenses and the inherent risks of litigation. Class Counsel believes that the Settlement is beneficial to the Class and meets the class-certification requirements of Rule 23.

### D.    The Extent Of Discovery.

Based upon information exchanged by the Parties and the confirmatory discovery provided pursuant to the mediation with Judge Holderman, Plaintiff believes it possesses the

evidence needed to evaluate the strengths and weaknesses of the case. Follett has provided Plaintiff with information relating to the identities of the Class Members, the size of the Class, the manner in which wireless telephone numbers were compiled, the manner in which the text messages were transmitted, the level of involvement of Follett, and empirical data concerning the number of text messages sent. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have informally exchanged information critical to evaluating the strength of Plaintiff's contentions and Follett's defenses, the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted). *See also In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 1981) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted); *Chase Bank*, 2016 WL 806549, at *9 ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery). Here, information more than sufficient to make a reasonable and informed

-13-

decision has been procured, meaning that there was a reasonable, informed basis to evaluate the Settlement.

### E. The Presence Of Governmental Participants.

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. Follett will provide such notice which will include all appropriate information and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

### III. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.

### A. The Class Should Be Provisionally Certified.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the

fair and efficient adjudication of the controversy. *Id*. at 615; *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### 1.     Numerosity — Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("[A] plaintiff need not identify each class member or even provide an exact number of class members to satisfy that element.") (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004).

"[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that '[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" *Chase Bank USA, N.A.*, 2016 WL 806549, at *4 (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415

F.2d 1326, 1333 n.9 (7th Cir. 1969)); *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) (granting class certification, distinguishing that "impracticable" does not mean "impossible," but rather extremely difficult and inconvenient).

In this case, approximately 1,884,821 individuals were sent text messages between October 9, 2011 and December 24, 2015. (Siprut Decl. ¶12.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### 2.    Commonality/Predominance — Federal Rule Of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

a.   Whether Follett engaged in a pattern of sending unsolicited text messages;

b.   Whether Follett sent, or caused to be sent, the text messages at issue;

c.   The manner in which Follett compiled or obtained their list of facsimile numbers;

d.   The method in which Follett sent, or caused to be sent, the messages at issue; and

e.   Whether Follett thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all recipients[.]" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318 (2014).

In this case, common questions predominate for the Settlement Class because Follett's alleged unlawful conduct presents common questions with regard to all proposed Settlement

Class Members. *Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Follett's conduct.

### 3. Typicality — Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class allege that they all received unsolicited text messages from or on behalf of Follett, and that Follett sent or had sent on its behalf the text messages in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Class members' claims.

4.      **Adequacy of Representation —
Federal Rule Of Civil Procedure 23(a)(4).**

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (1) their claims are not in conflict with those of the proposed class; (2) they have sufficient interests in the outcome of the case; and (3) they are represented by experienced, competent counsel. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding class counsel was adequate stating if "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.").

Here, Plaintiff's interests are consonant with the interests of the Settlement Class—obtaining relief from Follett for its alleged unlawful transmission of text messages, and ensuring that Follett does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (Siprut Decl. ¶18.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶17; Siprut Firm Resume (attached as Exhibit A to the Siprut Decl.).) Accordingly, Plaintiff and its counsel would adequately represent the proposed Class.

5.      **Superiority — Federal Rule Of Civil Procedure 23(b)(3).**

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of

superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 117)).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by Follett's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual members of the Class to obtain effective relief.

### B.     The Form And Method Of Service Of Class Notice Should Be Approved.

"When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, § 11:30, p. 11-62-11-63 (4th ed. 2002). The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. Additionally, dissemination of the notice must comport with both Rule

-20-

23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements as well as due process considerations, and provides:

1.      A brief summary of the claims alleged in the action;

2.      An explanation of the proposed terms of the Settlement, the amount the Class members are entitled to receive under the Settlement Agreement, and the method by which Class members can claim their Settlement benefit;

3.      An explanation of the right to opt out of and/or object to the Settlement within given time-frames and subject to certain requirements;

4.      An explanation that members of the Class who do not opt out will be bound by the proposed Settlement and judgment and will have released their claims;

5.      An explanation that members of the Class who do not opt out will be represented by proposed Class Counsel; and

6.      An identification of Class Counsel and a means for making inquiries thereof.

Federal courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen,* 417 U.S. at 175-76.

In this case, the Settlement provides for direct notice via U.S. Mail and electronic mail, as well as both print and internet publication. During settlement negotiations, Follett produced, processed and analyzed confirmatory class data, and determined that the class size was

approximately 1,884,821 individuals, a majority of which Follett had postal and/or e-mail address records. (Siprut Decl. ¶12.) Subsequently, Class Counsel requested the Settlement Administrator examine and verify the confirmatory data in order to determine the most practicable method of notice. (*Id.* ¶14.) The Settlement Administrator analyzed the records and determined that, taking into account typical "undeliverable" rates for mail and e-mail, direct notice via e-mail, in conjunction with print and internet publication notice, would effectively cause notice to reach more than 70% of the Class.[4] (*Id.* ¶14.)

Courts in this District routinely find such methods of notice reasonably calculated to reach class members by the best means practicable. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. at 351-53 (granting approval of notice plan that consisted of notice on class members' monthly bill, via text message, electronic mail, and U.S. mail, and via print publication); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (same); *In re Nat'l Collegiate Athletic Ass. Student-Athlete Concussion Injury Litig.,* 314 F.R.D. 580, 603 (N.D. Ill. 2016) (granting approval of notice plan that consisted of both direct and publication notice; noting the Federal Judicial Center's recommendations); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,* No. 09-cv-03690, 2014 WL 1017515, at *2 (N.D. Ill. Mar. 17, 2014) (granting approval of notice plan that consisted of mail notice and publication notice); *Hedges v. Earth Inc.,* No. 14-cv-9858, 2015 WL 10853985, at *2 (N.D. Ill. Oct. 14, 2015) (same); *In re Capital One,* 80 F. Supp. 3d at 786

---

[4] The Federal Judicial Center's recommends notice to reach 70% to 95% of the class. *See* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide at 3 (Federal Judicial Center 2010).

(granting approval of notice plan that consisted of mail, e-mail, and internet publication notice).[5] Accordingly, this notice plan should be approved.

### C. The Court Should Schedule A Hearing For Final Settlement Approval.

Following notice to the Class, a Fairness Hearing is to be held on the proposed Settlement. MANUAL FOR COMPLEX LITIGATION, § 21.633. Accordingly, Plaintiff, by proposed Class Counsel, respectfully requests that the Court schedule a hearing on final approval of the Settlement to be held no earlier than 180 days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice. After receiving final approval, the Parties request that the Court enter a final order approving the Settlement.

### <u>CONCLUSION</u>

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and advantageous to the proposed Class, Plaintiff respectfully requests that the Court enter an Order:

A.   Preliminarily approving the Settlement as being fair, reasonable, and adequate;

B.   Preliminarily approving the form, manner, and content of the Class Notice;

C.   Setting the date and time of the Final Approval Hearing to be held no earlier than 180 days after entry of the Preliminary Approval Order;

D.   Provisionally certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

E.   Appointing Plaintiff as Class Representative;

F.   Appointing Joseph J. Siprut and Siprut PC as Class Counsel; and

---

[5] *See also A & L Indus., Inc. v. P. Cipollini, Inc.,* 2014 WL 906180, at *1 (D.N.J. Mar. 7, 2014) (rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally.").

G.      Such other and further relief the Court deems just and proper.

Dated: September 15, 2016                           Respectfully submitted,

                                                    By:  *s/ Joseph J. Siprut*

                                                    Joseph J. Siprut
                                                    *jsiprut@siprut.com*
                                                    Ke Liu
                                                    *kliu@siprut.com*
                                                    **SIPRUT PC**
                                                    17 N. State Street
                                                    Suite 1600
                                                    Chicago, Illinois  60602
                                                    Phone: 312.236.0000
                                                    Fax: 312.878.1342

                                                    ***Counsel for Plaintiff***
                                                    ***and the Proposed Settlement Class***

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Preliminary Approval Of Class Action Settlement** was filed this 15th day of September 2016 via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

*s/ Joseph J. Siprut*