IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8980 |
| v. | ) ) | Judge William T. Hart |
| FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation, | ) ) ) ) | |
| Defendant. | ) | |

**JOINT MOTION TO AMEND THE AMENDED PRELIMINARY APPROVAL
ORDER TO REVERT TO THE PARTIES' AGREED CLASS DEFINITION**

Plaintiff Lijana Shestopal ("Plaintiff") and Defendant Follett Higher Education Group, Inc. ("Defendant" or "Follett," and together with Plaintiff, the "Parties"), hereby jointly move this Honorable Court to enter the further amended Preliminary Approval Order, attached as Exhibit A, to revert to the agreed Class Definition the Parties presented. In support of this motion, the Parties state:

**Introduction**

1. The Parties greatly appreciate the Court's careful attention to this action and the Court's views regarding appropriate language in the approval order. However, one change made in the name of clarity by the Court *sua sponte* to the Amended Preliminary Approval Order entered on Friday, November 4, 2016 (Dkt. 47), jeopardizes the Parties' settlement. Specifically, the Court struck the language in the class definition "or someone on one of [Defendant's

affiliates'] behalves." Respectfully, this change imperils the settlement because texts were generally *only* sent on behalf of Follett and its affiliates by non-parties contracted by Follett; in other instances Follett and its affiliates sent texts utilizing technology owned and hosted by a non-party entity.[1] Consequently, unless the Parties' agreed language is used, there will be no class members who receive relief (because, arguably, Follett itself sent no texts), and the release received by Follett will not be effective (because, arguably, there will be no class members who will be bound). The Parties therefore jointly and respectfully request that the Court "undo" that change and adopt the Parties' Class Definition.

**Factual And Procedural Background**

2.  On October 9, 2015, Plaintiff filed this putative class action lawsuit against Follett, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA"). (Dkt. 1.) Among other things, Follett owns and operates university bookstores, and related websites. As part of its operations, Follett (which does not have internal capacity to send out the text messages to customers) contracted with third-parties to send out texts to certain customers and prospective customers or utilized applications owned and hosted by third parties to send text messages. In short, Follett often used third parties to send text messages. Plaintiff

---

[1] Follett used different vendors over the class time period and the mechanics varied from vendor to vendor. We understand that Follett employees in some circumstances provided the final instruction to send texts, and in some circumstances used applications owned and hosted by third parties to send text messages.

alleges that Follett did not have effective and proper consent before texts were sent on its behalf; Follett denies that. Over the course of the winter months of 2016, the parties exchanged discovery and engaged in extensive settlement negotiations, but they were unable to reach a settlement of the putative class action.

3. On March 8, 2016, the Parties held a full-day mediation with Retired Chief District Judge James F. Holderman. After negotiating for a full day with the assistance of Chief Judge Holderman, in the early evening hours, the Parties ultimately accepted the mediator's proposal of settlement terms. The Parties executed a term sheet that set forth the material terms of an agreement to resolve the claims of Plaintiff and the proposed putative class. The term sheet including a preliminary definition of the class to be covered by the settlement.

4. On September 14 and 15, 2016, the Parties executed a fully-developed settlement agreement (the "Settlement Agreement"). (Dkt. 38-1.) The Settlement Agreement defines the class of individuals covered by the settlement as, "all individuals in the United States to whose wireless telephones Defendant, its affiliates, subsidiaries, *or someone on one of their behalves*, sent a nonemergency text message through the use of automatic telephone dialing system, from October 9, 2011, up to and including December 24, 2015" (the "Class Definition") (emphasis supplied). (*Id.* § 1.34.) The Parties had carefully negotiated and selected that definition in order to capture the intended class members, who received messages at the instance of—but not directly from—Follett.

5. The Parties appeared before the Court on September 22, 2016, for a Preliminary Approval Hearing. Counsel for Plaintiff and the putative class presented a Preliminary Approval Motion (Dkt. 38), which the Court granted (Dkt. 41). Plaintiff's Preliminary Approval Motion used the same definition of the class as the Class Definition in the Parties' Settlement Agreement. (Dkt. 38 at 5.) On October 6, 2016, the Court entered the Preliminary Approval Order, preliminarily approving the settlement between Defendant, on the one side, and Plaintiff and the putative class, on the other. (Dkt. 42.) The Court did not take issue with the agreed Class Definition at that time. The Parties, and the class administrator, began notice procedures based on the preliminarily approved settlement.

6. On October 27, 2016, the Parties filed a Joint Motion To Amend Preliminary Approval Order To Correct Typographical Errors In Paragraphs 3, 4, 7, And 15 (the "Joint Motion"). (Dkt. 44.) In conjunction with that motion, the parties submitted a Proposed Amended Preliminary Approval Order to the Court's Proposed Order Inbox, in addition to attaching it as Exhibit C to the Joint Motion. (Dkt. 44-3.) The Parties noted one typographical error in the Class Definition, and the Court noted another.

7. On November 3, 2016, the Parties appeared before the Court on their Joint Motion. At that hearing, the Court informed the Parties that the Court would accept the Parties' edits as set forth in their Joint Motion. The Court also informed the Parties that it had made additional edits to the Proposed Amended Preliminary Approval Order, and it handed counsel for

4

each of the Parties a copy of an Amended Preliminary Approval Order that the Court had edited, but which it had not yet entered.

8.  Among the Court's edits, the Court proposed editing the Class Definition to read as follows: "all individuals in the United States to whose telephones Defendant, its affiliates, or subsidiaries sent a non-emergency text message through the use of automatic telephone dialing system, from October 9, 2011, up to and including December 24, 2015." (*See* dkt. 47, § 3.) The Court informed the Parties that it had expressly omitted the language, ". . .or someone on one of their behalves . . ." from the Class Definition. On November 4, 2016, the Court entered a Minute Entry stating that the Parties' Joint Motion "is granted as stated in open court." (Dkt. 46.) The Court also entered the Amended Order that it handed to the Parties the day before. (Dkt. 47.)

**The Court Should Further Amend The Preliminary**
**Approval Order To Revert To The Parties' Agreed Class Definition**

9.  The Parties respectfully request that the Court enter the Agreed Second Amended Preliminary Order attached as Exhibit A, which reverts to the Parties' agreed Class Definition, for four reasons.

10.  *First*, as explained above, the current class definition would unintentionally result in a potentially empty class. Follett contracts with third parties to send text messages on its behalf, or utilized applications owned and hosted by third parties to send text messages. While Follett employees may have provided instructions to third parties to send text messages or

5

utilized applications owned and hosted by third parties to send text messages, it is those third parties that actually provide the mechanics of sending the messages.[2] In other words, while Follett may have sent messages utilizing third-party technology (in many cases), members of the putative class generally would not have received a text message directly from Follett, its affiliates, or subsidiaries. The current definition of the class thus means that there would be no (or, at the most, a significantly reduced number of) class members. This would be so even though the Parties have identified approximately 1.88 million unique mobile telephone numbers that may have received text messages sent *on behalf of* Follett and its affiliates. A large portion of the individuals to whom these telephone numbers belong may not be afforded *any* relief if the Court's *sua sponte* amended class definition takes effect.

11.     *Second*, the Parties reached the Class Definition after a hard-fought, months-long period of arms-length negotiation and information exchange. During that time, the Parties exchanged substantial discovery and numerous settlement proposals, ultimately culminating in a

---

2 This is a common practice that is reflected in the Federal Communications Commission's ("FCC") interpretation of the TCPA. The FCC has "clarifi[ed] that while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) [of the TCPA] that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C. Rcd. 6574, 6574 (2013). (Follett notes, however, that it has expressly denied any wrongdoing whatsoever, and it has denied and continues to deny that it committed any of the wrongful acts or violations of law or duty that are alleged in this lawsuit.)

full-day mediation with Chief Judge Holderman, who made a mediator's proposal that both sides ultimately accepted. After the mediation, the Parties continued to refine the Class Definition. Thus, the Class Definition that is integrated into the Parties' Settlement Agreement is the product of extensive discussions and is integral to that Agreement.

12. ***Third***, the expensive process of noticing the class has already begun with the Class Definition as it was agreed, and revising the definition of the settlement agreement at this time would result in substantial wasted resources and additional costs, all to the detriment of the class. The website https://www.folletttcpasettlement.com/Home.aspx is live. With the help of counsel for the Parties, the settlement administrator appointed by the Court, Kurtzman Carson Consultants, LLC ("KCC"), has prepared the notices that will be sent to each class member for whom the Parties have contact information. Direct notice is scheduled to be mailed on November 21, 2016. KCC has also purchased advertising space in People Magazine, and it submitted to People Magazine a notice of the settlement—including the Class Definition as defined by the Parties. This notice is set to print in just three days, in the November 11, 2016 edition of People Magazine, and KCC has also arranged for internet advertisements using the parties' agreed Class Definition sufficient to hit five million impressions. In fact, those internet advertisements have ***already hit*** 3,879,611 impressions. Moreover, as of close of business on Monday, November 7, 2016, internet users who have seen the internet advertisements and/or the settlement website have ***already submitted*** 2,032 claims. Follett further notes that it has already

provided notice to the United States Attorney General and the Attorneys General of the 50 states pursuant to The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715(b), using the Parties' Class Definition. If the Parties were required to begin again at square one with a revised class definition (if the Parties decided that they even wished to continue with the settlement at all), this will require extensive time and resources. These expenditures were not built into KCC's or the Parties' estimates of its costs, and they would unnecessarily dilute the recovery of the class.

13. *Fourth*, the Parties are by no means suggesting that the class consists of a potentially limitless number of individual class members by using the language ". . . or someone on one of their behalves . . ." in the Class Definition. As the Parties have informed the Court, the parties have determined that there are approximately 1.88 million individuals who may have received text messages from a non-party on Follett's behalf during the class period. The Parties have a list of these mobile numbers. The use of the term ". . . or someone on one of their behalves . . ." is meant to acknowledge the fact that Follett itself does not send any text messages using its own technology. The Parties do not intend to use that term in order to expand the bounds of the class.[3]

---

[3] The Parties also considered the possibility, in response to the Court's amendment, of specifically listing the non-party entities who sent the messages on behalf of Follett and its affiliates. However, Follett's records do not permit it to make that determination with reasonable certainty.

**Conclusion**

14. For the foregoing reasons, the Parties respectfully request that that the Court strike the Amended Preliminary Approval Order it entered on November 4, 2016 (dkt. 47), and enter a Second Amended Preliminary Approval Order that is identical in all respects to the Amended Preliminary Approval Order, but which includes the Class Definition to which the Parties agreed. The Parties attach as Exhibit A a clean version of the Second Amended Preliminary Approval Order that the Parties request the Court enter, which the Parties have also submitted to the Court's Proposed Order Inbox.

WHEREFORE, Plaintiff Lijana Shestopal and Defendant Follett Higher Education Group, Inc., respectfully request that this Court strike the Amended Preliminary Approval Order that it entered on November 4, 2016, and enter the Proposed Second Amended Preliminary Approval Order with the Parties' Class Definition.

Dated: November 8, 2016                                Respectfully Submitted,

By:  /s/ Joseph J. Siprut                              By:  /s/ David Jimenez-Ekman

    Joseph J. Siprut                                     Craig C. Martin
    Ke Liu                                               David C. Layden
    Siprut PC                                            David Jiménez-Ekman
    17 N. State Street                                   Hillary E. August
    Chicago, IL 60602                                    Jenner & Block LLP
    Telephone:  312 236-0000                             353 N. Clark Street
    Facsimile:  312 878-1342                             Chicago, IL 60654-3456
    *jsiprut@siprut.com*                                 Telephone:  312 222-9350
    *kliu@siprut.com*                                    Facsimile:  312 527-0484
                                                         *cmartin@jenner.com*
                                                         *djimenez-ekman@jenner.com*
                                                         *dlayden@jenner.com*
                                                         *haugust@jenner.com*

## CERTIFICATE OF SERVICE

I, David Jimenez-Ekman, counsel of record for Defendant Follett Higher Education Group, Inc., hereby certify that on November 8, 2016, I electronically filed the foregoing **Joint Motion To Amend The Amended Preliminary Approval Order To Revert To The Parties' Agreed Class Definition** with the clerk of the U.S. District Court for the Northern District of Illinois using the Court's electronic case filing (ECF) system, which in turn will send a "Notice of Electronic Filing" to all counsel of record.

/s/ David Jiménez-Ekman<br>
David Jiménez-Ekman