IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8980 |
| v. | ) ) | Hon. William T. Hart |
| FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation, | ) ) ) ) | Hon. Jeffrey Cole |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR**
**ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260
**www.siprut.com**

*Counsel for Plaintiff*
*and the Settlement Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY....................................................................................................1

ARGUMENT..........................................................................................................................4

    A.    Class Counsel Seeks 35% Of The Settlement
           Fund *After* Deduction Of Settlement Administration
           Expenses, Which Is Well Within Seventh Circuit Guidelines...................................4

    B.    Class Counsel Should Be
           Reimbursed For Its Out-Of-Pocket Expenses............................................................8

    C.    The Incentive Award Sought By Plaintiff Is Appropriate ..........................................9

CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).......................................... 9

*Andermann v. Sprint Spectrum L.P.*,
    785 F.3d 1157 (7th Cir. 2015) ........................................................................................ 6

*Arenson v. Bd. of Trade of City of Chi.*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ................................................................................. 8

*Castillo v. Noodles & Co.*,
    No. 16-cv-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)........................................ 9

*City of Greenville v. Syngenta Crop Protection, Inc.*,
    904 F. Supp. 2d 902 (N.D. Ill. 2012) .............................................................................. 9

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998). ................................................................................. 9, 10

*DiGiacomo v. Plains All Am. Pipeline*,
    No. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ...................................... 8

*Espenscheid v. DirectSat USA, LLC*,
    688 F.3d 872 (7th Cir. 2012) .................................................................................... 9, 10

*Friedman v. Torchmark Corp.*,
    No. 12-CV-2837-IEG (BGS), 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) .................... 6

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) .................................................................................. 4

*Heekin v. Anthem, Inc.*,
    No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)................. 4

*In re Cenco, Inc. Secs. Litig.*,
    519 F. Supp. 322 (N.D. Ill. 1981) .................................................................................. 8

*In re Charter Comm's., Inc. Sec. Litig.*,
    No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005)........................................ 8

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
    No. 09-cv-3690, MDL No. 2013, 80 F. Supp. 3d 838 (N.D. Ill. 2015)............................. 4

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Penn. 2005) ............................................................................... 8

*In re Sw. Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) ............................................. 10

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ............................................................................................. 5

*Kitson v. Bank of Edwardsville*,
    No. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) .......................................... 4

*McCue v. MB Fin., Inc.*,
    No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ....................................... 4, 9

*NB v. Indus. v. Wells Fargo & Co.*,
    No. C 10-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ................................ 6

*Payton v. Kale Realty, LLC*,
    164 F. Supp. 3d 1050 (Feb. 22, 2016) ............................................................................... 5

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................................................... 1, 4

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*,
    526 F. Supp. 2d 851 (N.D. Ill. 2007) ................................................................................ 6

*Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.*,
    No. 12-11693-GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013) ................................. 6

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2015) ................................................................................ 8

*Spicer v. Chi. Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993). ................................................................................ 10

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015). .............................. 9

**Statutes and Rules**

47 U.S.C. § 227 ............................................................................................................................ 5, 6

Fed. R. Civ. P. 23 ............................................................................................................................ 8

**Other Authorities**

Alba Conte,
    *Attorney Fee Awards* (2d ed. 1993) ................................................................................ 8

Consumer Financial Protection Bureau,
    Study Finds That Arbitration Agreements
    Limit Relief For Consumers 1 (Mar. 10, 2015) .................................................................. 6

Daniel Higginbotham, Buyer Beware:
    Why The Class Arbitration Waiver Clause
    Presents Gloomy Future For Consumers, 58 Duke L.R. 103 (2008) .................................. 6

Richard Posner,
    *Economic Analysis of Law* (2d ed. 1984) .......................................................................... 5

## INTRODUCTION

Well over a year ago, Class Counsel began its investigation and analysis of what became this lawsuit – statutory claims for violation of the Telephone Consumer Protection Act on behalf of a nationwide class of consumers and students. Without any guarantee of payment or success, Class Counsel aggressively prosecuted this litigation, including through a mediated settlement with the assistance of Honorable James Holderman (Ret.), and then months of confirmatory discovery thereafter.

Class Counsel now seeks the Court's approval of an award of 35% of the all-in, non-reversionary $3,500,000 common fund (the "Settlement Fund"), *after* deduction of settlement administration expenses and Plaintiff's incentive award, plus unreimbursed litigation costs – consistent with Seventh Circuit guidelines. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that in consumer class actions attorneys' fees should not exceed a third to one half the money going to class members and their counsel). Moreover, through January 20, 2017, Class Counsel has expended 804 hours prosecuting this matter, incurring a lodestar of $432,750.00, and out of pocket expenses of $8,531.38. A lodestar cross-check thus reflects that an award of $1,048,989.55 constitutes only a 2.42 multiplier on reported time, which is well within the accepted range in this District. Plaintiff also seeks an incentive award of $3,000, which is reasonable to compensate Plaintiff for her time and risk as class representative.

Accordingly, as further set forth below, Plaintiff respectfully requests that her motion be granted.

## PROCEDURAL HISTORY

On October 9, 2015, Plaintiff filed her Class Action Complaint against Defendant Follett Higher Education Group, Inc. ("Follett" or "Defendant") (Plaintiff and Follett are, collectively,

the "Parties"), seeking to represent a proposed class of all individuals or entities who allegedly received unsolicited text messages to their wireless telephones from or on behalf of Follett in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") (the "Complaint"). (Dkt. No. 1.) On December 1, 2015, Follett filed its Answer to Plaintiff's Complaint, denying that Follett had violated the TCPA and raising a number of affirmative defenses, including failure to state a claim, failure to establish Article III standing, violation of due process, and alleging that the text messages at issue did not constitute "advertisements" under the TCPA. (Dkt. No. 14.) Additionally, Follett also contended that Plaintiff and the Class Members consented to the text messages at issue and were also subject to an arbitration agreement. (*Id.*)

Between December 2015 and March 2016, the Parties exchanged substantial information and engaged in numerous discussions regarding Plaintiff's claims and Follett's defenses. During this time, the Parties kept the Court updated as to the status of these discussions. (Dkt. Nos. 16-18.) On March 8, 2016, the Parties held a private mediation with Retired District Judge James F. Holderman at the office of JAMS, located at 71 South Wacker Drive, Suite 3090, Chicago, Illinois 60606. Prior to the mediation, the Parties exchanged written mediation statements summarizing their respective positions as to the factual and legal issues of this litigation. After a full day of mediation and only with Judge Holderman's assistance, the Parties agreed to a Settlement Term Sheet which set forth the material terms of an agreement to resolve the claims of Plaintiff and the Settlement Class. As part of the Settlement Term Sheet, the Parties agreed to engage in reasonable confirmatory discovery regarding class size, date and number of text messages sent, identity of class members, method for transmitting text messages, and Follett's finances.

In order for confirmatory discovery to proceed, on March 28, 2016, the Parties filed a Joint Motion For Entry of Agreed Confidentiality Order, which was granted on March 29, 2016.[1] (Dkt. Nos. 19, 20.) Subsequently, the Parties engaged in confirmatory discovery. Between April 2016 and July 2016, Follett hired an outside vendor to conduct extensive data analysis and produced confirmatory discovery in the form of hundreds of documents amounting to over 10GB of raw data, including lists of potential Class Members. Between July 2016 and August 2016, Class Counsel conducted a comprehensive review of the documents and concluded that approximately 1,360,561 to 1,884,821 unique mobile telephone numbers received text messages from or on behalf of Follett between October 9, 2011 through December 24, 2015. The Parties determined the names, phone numbers, last known addresses, and last known email addresses for a large majority of the Class. In addition, Class Counsel also confirmed the manner in which the phone numbers were obtained, the text messages were sent, and the involvement of third parties in the sending of the text messages.

Based on the confirmatory discovery, the Parties engaged in numerous settlement negotiations between June 2016 and September 2016 in order to finalize the terms of the Settlement Agreement. Additionally, in August 2016, Class Counsel requested the Settlement Administrator also analyze the confirmatory discovery in order to determine the best practicable manner of effecting notice on the Class. Based on the Settlement Administrator's analysis, the Parties engaged in substantive negotiations and structured an effective notice plan involving multiple forms of direct notice and publication notice. After many exchanges of drafts and edits, and numerous conference calls, the Parties were able to agree to the form and content of a settlement agreement that was fully executed on September 15, 2016. Also on that day, Plaintiff

---

[1] A revised version of the Confidentiality Order was entered on May 19, 2016. (Dkt. No. 30.)

filed her Motion For Preliminary Approval Of Class Action Settlement (Dkt. No. 38), which the Court approved on October 6, 2016.[2] (Dkt. No. 42.)

As of January 20, 2017, Class Counsel has expended 804 hours prosecuting this litigation, constituting a total lodestar amount of $432,750. (*See* Declaration of Joseph J. Siprut ("Siprut Decl.") ¶4, attached hereto as Exhibit 1.)

## ARGUMENT

**A. Class Counsel Seeks 35% Of The Settlement Fund *After* Deduction Of Settlement Administration Expenses, Which Is Well Within Seventh Circuit Guidelines.**

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating attorneys' fees in common fund settlements, such as this one. *Pearson v. NBTY, Inc.,* 772 F.3d 778, 782 (7th Cir. 2014) ("[T]he presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel."); *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,* No. 09-cv-3690, MDL No. 2013, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (stating that the percentage of the fund method "has emerged as the favored method for calculating fees in common-fund cases in this district").

And while the Seventh Circuit has held that the range of appropriate percentage fee awards may be as high as 50%, *NBTY,* 772 F.3d 782, Class Counsel seeks only 35% here – and only after the deduction of all administration expenses at that.[3] Indeed, the contingency fee

---

[2] Subsequently, the Preliminary Approval Order was amended several times. (Dkt. Nos. 47, 54.)

[3] *See also Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (38% fee award); *Kitson v. Bank of Edwardsville,* No. 08-507-GPM, 2010 WL 331730, at *3 (S.D. Ill. Jan. 25, 2010) (33% fee award); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (33% fee award after deduction of settlement administration expenses); *Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) ("[T]he Court finds there is

awarded to class counsel must be greater than the fees that the same attorneys would charge their clients in non-contingency cases. As Judge Posner has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The interest rate on such a loan is high because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is so much higher than that of conventional loans.

Richard Posner, *Economic Analysis of Law* § 21.9 (2d ed. 1984).

In *In re Synthroid,* the Seventh Circuit held that the market rate for legal fees depends in part on the following: (1) the risk of nonpayment a firm agrees to bear, in part, (2) the quality of its performance, in part on (3) the amount of work necessary to resolve the litigation, and in part on (4) the stakes of the case. *In re Synthroid,* 264 F.3d 712, 721 (7th Cir. 2001). Consideration of these factors confirms that an attorneys' fee award of 35% of the Settlement Fund after deduction of settlement administration expenses and incentive award is appropriate.

*First*, Class Counsel incurred a significant risk of nonpayment by prosecuting this case. TCPA claims are a thicket of legal issues that are extremely precarious to navigate, and new developments in the law occur on a near-daily basis. Furthermore, Follett, through able counsel at Jenner & Block LLP, presented numerous defenses which, if any one were successful, would result in *no* benefit to the Class. (Dkt. No. 14.) Significantly, Follett asserted consent,[4]

---

support from other cases in this Circuit and nationally that support a market rate of 33.3%." (citing 12 cases within the Seventh Circuit where fees were awarded of at least 33%)).

[4] *See* 47 U.S.C. § 227(b)(1) (prohibiting calls made using any automatic telephone dialing system or prerecorded voice without the prior express consent of the called party); *Payton v. Kale Realty, LLC,* 164 F. Supp. 3d 1050, 1065 (Feb. 22, 2016) (holding that plaintiff provided prior express consent to receipt of text messages).

arbitration,[5] and advertisement defenses.[6] (*Id.*) Indeed, the stakes were high and there was no certainty that Plaintiff would succeed, or that the case would settle, at the inception of this lawsuit. Although Class Counsel maintains that these defenses can and would be overcome on a contested basis, the risk presented is obvious. Indeed, the Settlement promotes judicial economy, balances the risks faced by the Class, and provides substantial benefits to the Class. Class Counsel believes they have achieved an excellent result.

*Second*, Class Counsel has expended a total of 804 hours prosecuting this litigation. This represents a substantial amount of work, including the following:

- **Pre-Complaint Factual & Legal Investigation**. Class Counsel began conducting a factual and legal investigation in 2015, starting with interviews with Plaintiff and an analysis of the text message received by Plaintiff. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claims; (2) drafting, preparing, and filing the Complaint; and (3) engaging in correspondence with Plaintiff regarding the complaint and the case in general.

- **Discussions With Follett & Mediation.** After appearing in this case, the Parties exchanged informal discovery and engaged in multiple discussions on

---

[5] *See Andermann v. Sprint Spectrum L.P.,* 785 F.3d 1157, 1160 (7th Cir. 2015) (discussing the difficulty of arbitrating individual TCPA claims); Consumer Financial Protection Bureau, Study Finds That Arbitration Agreements Limit Relief For Consumers 1 (Mar. 10, 2015) (finding "very few consumers individually seek relief through arbitration and the courts, while millions of consumers obtain relief each year through class action settlements"); Daniel Higginbotham, Buyer Beware: Why The Class Arbitration Waiver Clause Presents Gloomy Future For Consumers, 58 Duke L.R. 103 (2008) ("'If [mandatory arbitration] catches on, it could wipe out years of progress in consumer protection.'").

[6] *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial availability or quality of any property, goods, or services); *Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.,* 526 F. Supp. 2d 851, 852-53 (N.D. Ill. 2007) (holding that fax at issue was not an advertisement under the TCPA); *Physician's Healthsource, Inc. v. MultiPlan Servs. Corp.,* No. 12-11693-GAO, 2013 WL 5299134, at *2 (D. Mass. Sept. 18, 2013) (similar); *Friedman v. Torchmark Corp.,* No. 12-CV-2837-IEG (BGS), 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16, 2013) (similar); *NB v. Indus. v. Wells Fargo & Co.,* No. C 10-03203 LB, 2010 WL 4939970 at *9-10 (N.D. Cal. Nov. 30, 2010) (similar).

the nature of their claims and defenses. For example, Follett provided information on how Class Members purportedly agreed to arbitrate their claims against Follett and provided consent to receive text messages from Follett. The Parties also exchanged robust settlement position statements provided detailed analyses of issues surrounding the nature of the text messages, arbitrability, consent, and class certification. Class Counsel significantly researched class certification issues (and potential Follett defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature. Subsequently, the Parties prepared and submitted detailed position statements and engaged in an all-day private mediation with Retired District Judge James F. Holderman.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with Follett. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through settlement discussions and confirmatory discovery, and regularly engaged in telephonic conferences and email exchanges. After months of negotiations and only with Judge Andersen's assistance were the Parties able to reach the Settlement here which provides immediate and direct benefits to the Class.

- **Confirmatory Discovery**. As a result of the successful mediation, Class Counsel engaged in voluminous confirmatory discovery in order to determine the identities of Class members and to structure an effective notice plan. This process involved the analysis of over 10GB of raw data, as well as numerous telephonic conferences and e-mail correspondence with Follett. Class Counsel also engaged with the Settlement Administrator to analyze the confirmatory discovery and to structure an appropriate notice plan.

- **Settlement Administration.** After the Court granted preliminary approval, Class Counsel oversaw the administration of notice to the Class members. In addition, Class Counsel worked with Follett and the Settlement Administrator in drafting, editing, and approval of numerous notice documents, including: (1) postcards that were mailed to Class members; (2) notices that were emailed to Class members; (3) notices that were published in *People* magazine; (4) notices that were display on a variety of websites online; (5) claim forms and explanatory materials; and (6) information posted to the settlement website, http://www.folletttcpasettlement.com.

- **Interactions Members of the Class**. Class Counsel has received various inquiries from Settlement Class Members, which has required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

A lodestar cross-check also shows that the requested fees are reasonable. Here, Class Counsel's fee request of $1,048,989.55 reflects a 2.42 multiplier on its base lodestar of $432,750.00. (Siprut Decl ¶4.) Court have approved multipliers of up to and beyond four (4). *See, e.g., Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (multiplier of 2.5); *In re Cenco, Inc. Secs. Litig.,* 519 F. Supp. 322, 327 (N.D. Ill. 1981) (multipliers of 4 and 2); *Arenson v. Bd. of Trade of City of Chi.,* 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (multiplier of 4); *In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587, 589 (E.D. Penn. 2005) (multiplier of 6.96); *DiGiacomo v. Plains All Am. Pipeline,* No. H-99-4137, 2001 WL 34633373, at *10-11 (S.D. Tex. Dec. 19, 2001) (multiplier of 5.3); *In re Charter Comm's., Inc. Sec. Litig.,* No. MDL 1506, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.61); *see also* 1 Alba Conte, *Attorney Fee Awards* § 2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multipliers of 5 or 10 times the lodestar."). Accordingly, Class Counsel's fee request is well within reason.

**B.      Class Counsel Should Be Reimbursed For Its Out-Of-Pocket Expenses.**

Additionally, Class Counsel should be reimbursed for its out of pocket expenses of $8,531.38. (Siprut Decl. ¶7.) Pursuant to Fed. R. Civ. P. 23(h), a court may award "reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties' agreement." Courts regularly award reimbursement for expenses that are reasonable and necessarily incurred. The costs incurred here, detailed in the supporting declaration of Class Counsel, were incurred in the prosecution of this case and, significantly, include mediation fees paid to JAMS. Now that the case has settled successfully, those costs can be reimbursed from the Settlement Fund. *See City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 911 (N.D. Ill. 2012)

(awarding fees *and costs*); *McCue*, 2015 WL 4522564, at *3 (same); *Zolkos v. Scriptfleet, Inc.,* No. 12 Civ. 8230 (GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (same).

C. <u>The Incentive Award Sought By Plaintiff Is Appropriate.</u>

"Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Castillo v. Noodles & Co.,* No. 16-cv-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Castillo,* 2016 WL 7451626, at *2. Plaintiff seeks a modest $3,000 incentive award for her contributions to this case.

Courts consider three factors in their examination of the reasonableness of a requested service award: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Id.* at *3 (citing *Cook,* 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012)). Here, Plaintiff undertook substantial direct and indirect risk. She agreed to bring the action in her name and was ready to be deposed and to testify if there was a trial. In so doing, she assumed significant risk that "should the suit fail, [she] may find [herself] liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 876 (7th Cir. 2012) (citations omitted).

"The incentive award is designed to compensate [her] for bearing these risks." *Id.* Plaintiff also expended considerable time in aiding Class Counsel's initial investigation of her claim, and worked to provide a variety of documentation to support her claim on behalf of the Class. Courts in this circuit and others have approved similar incentive awards. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *2 (N.D. Ill. Oct. 3, 2013) (awarding $15,000 incentive award), *amended on other grounds,* 2014 WL 2809016 (N.D. Ill. June 20, 2014), *aff'd,* 799 F.3d 701 (7th Cir. 2015); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1269 (N.D. Ill. 1993) (awarding $30,000 incentive award). Accordingly, Plaintiff respectfully requests that the Court award her an incentive award of $3,000.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully suggests that attorneys' fees in the amount of 35% of the Settlement Fund after deduction of settlement administration expenses and incentive award ($1,048,989.55), unreimbursed litigation costs in the amount of $8,531.38, and an incentive award to Plaintiff in the amount of $3,000 are fair, appropriate, and reasonable, and respectfully requests the Court enter an Order approving these amounts.

Dated: January 20, 2017

Respectfully submitted,

By: *s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT** PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602

-11-

                Phone: 312.236.0000
                Fax: 312.878.1342

***Counsel for Plaintiff
and the Settlement Class***

Case: 1:15-cv-08980 Document #: 58 Filed: 01/20/17 Page 16 of 17 PageID #:373

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Attorneys' Fees, Costs And Incentive Award** was filed this 20th day of January 2017 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

*/s/ Joseph J. Siprut*