**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-8980 |
| v. | ) ) | Hon. William T. Hart |
| FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation, | ) ) ) | Hon. Jeffrey Cole |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

***Counsel for Plaintiff***
***and the Settlement Class***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................5

I.     COMPONENTS OF THE SETTLEMENT .............................................................5

     A.  The Settlement Class.................................................................................5

     B.  Benefit To Settlement Class Members ....................................................5

     C.  Incentive Award To Class Representative ...............................................6

     D.  Attorneys' Fees And Costs ......................................................................6

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED
     BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 .............................7

     A.  Numerosity – F.R.C.P. 23(a) ...................................................................8

     B.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3).............9

     C.  Typicality – F.R.C.P. 23(a)(3) ...............................................................11

     D.  Adequacy Of Representation – F.R.C.P. 23(a)(4) .................................12

     E.  Superiority – F.R.C.P. 23(b)(3) .............................................................13

III.   THE SETTLEMENT IS FAIR
     AND SHOULD RECEIVE FINAL APPROVAL.......................................................14

     A.  Strength Of The Case Measured Against The Settlement .....................16

     B.  The Complexity, Length, And Expense Of Continued Litigation .........18

     C.  The Settlement Class' Reaction And Lack Of Opposition To The Settlement .....19

     D.  Class Counsel's Opinion........................................................................20

     E.  The Stage Of The Proceedings And The Amount Of Discovery Completed ........21

IV.    THE COURT-APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS............22

CONCLUSION..................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. JPMorgan Chase Bank, N.A.,*
  No. 13-cv-80285, Dkt. No. 98 (N.D. Ill. Oct. 21, 2015).................................................... 19

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
  235 F. Supp. 2d 816 (N.D. Ill. 2002) ................................................................................. 15

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)...................................................................................................... 7, 14

*Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee,*
  616 F.2d 305 (7th Cir. 1980) ...................................................................................... 14, 15

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
  747 F.3d 489 (7th Cir. 2014) .............................................................................................. 8

*Baxter v. Kawasaki Motors Corp.*,
  259 F.R.D. 336 (N.D. Ill. 2009)........................................................................................ 11

*Bayat v. Bank of the West,*
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................. 19

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013). ........................................................................................... 10

*Carnegie v. Household Int'l, Inc.,*
  376 F.3d 656 (7th Cir. 2004) ............................................................................................ 14

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)............................................................................................................ 15

*CE Design Ltd. v. King Architectural Metals, Inc.,*
  637 F.3d 721 (7th Cir. 2011) ............................................................................................ 12

*Couser v. Comenity Bank,*
  125 F. Supp. 3d 1034 (S.D. Cal. 2015)............................................................................. 18

*Dolemba v. Illinois Farmers Ins. Co.,*
  No. 15 C 463, 2015 WL 4727331 (N.D. Ill. Aug. 10, 2015)........................................... 17

*Du Puy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,*
  519 F.2d 536 (7th Cir. 1975) ............................................................................................ 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ................................................................................... 15, 16

*Fletcher v. ZLB Behring LLC*,
    245 F.R.D. 328 (N.D. Ill. 2006) ..................................................................................... 10

*Frausto v. IC System, Inc.*,
    No. 10 CV 1363, 2011 WL 3704249 (N.D. Ill. Aug. 22, 2011) ..................................... 17

*Friedman v. Torchmark Corp.*,
    No. 12-cv-2837, 2013 WL 4102201 (S.D. Cal. Aug. 13, 2013) .................................... 17

*Gehrich v. Chase Bank USA, N.A.*,
    No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ..................................... *passim*

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) ....................................................................................... 15

*Gomez v. Ill. State Bd. of Educ.*,
    117 F.R.D. 394 (N.D. Ill. 1987) ..................................................................................... 13

*Green v. DirecTV, Inc.*,
    No. 10 CV 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ......................................... 17

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016) ............................................................................ 18

*Hinman v. M & M Rental Ctr., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................. 13

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................................ 15

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................. 19

*In re Capital One Tel. Consumer Prot. Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................. 18, 19, 20, 21

*In re Cenco, Inc. Sec. Litig.*,
    519 F. Supp. 322 (N.D. Ill. 1981) ................................................................................... 7

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 2010) ......................................................................................... 21

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................ 20

*In re Neopharm, Inc. Secs. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004) ..................................................................... 12

*In re Sw. Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ......................... 19

*In re Synthroid Marketing Litig.*,
    188 F.R.D. 287 (N.D. Ill. 1999) ..................................................................... 11

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ......................................................................... 11

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................. 14, 15, 16

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016).............................. 6

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)............................................................... *passim*

*Marcial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989) ............................................................................ 8

*Maxwell v. Arrow Fin. Servs., LLC*,
    No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ............................. 8

*Murphy v. DCI Biologicals Orlando, LLC*,
    No. 6:12-cv-1459, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) .................. 17

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*,
    No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016)..................... 19

*Patterson v. Gen. Motors Corp.*,
    631 F.2d 476 (7th Cir. 1980) ............................................................................ 9

*Payton v. Kale Realty, LLC*,
    164 F. Supp. 3d 1050 (N.D. Ill. 2016) ........................................................... 17

*Pope v. Harvard Banchares, Inc.*,
    240 F.R.D. 383 (N.D. Ill. 2006).......................................................................... 8

*Radmanovich v. Combined Ins. Co. of Am.*,
    216 F.R.D. 424 (N.D. Ill. 2003) ................................................................ 12

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .................................................................... 6

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) .................................................................. 9

*Rose v. Bank of Am. Corp.*,
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................... 19

*Scholes v. Stone, McGuire, & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992) ............................................................... 9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................... 7, 20, 21

*Smith v. Nike Retail Servs., Inc.*,
    234 F.R.D. 648 (N.D. Ill. 2006) ............................................................... 8

*Swanson v. Am. Consumer Indus., Inc.*,
    415 F.2d 1326 (7th Cir. 1969) .................................................................. 8

*Toney v. Rosewood Care Ctr., Inc. of Joliet*,
    No. 98 C 0693, 1999 WL 199249 (N.D. Ill. Mar. 31, 1999) ............................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .......................................................................... 9

*Whitten v. ARS Nat'l Servs. Inc.*,
    No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .......................... 9

*Wilkins v. HSBC Bank Nevada, N.A.*,
    No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................. 19

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .............................................................. 15, 16

## Statutes and Rules

47 U.S.C. § 227 .......................................................................................... 1, 16

Fed. R. Civ. P. 23 ............................................................................... *passim*

**Other Authorities**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993) ........................................................................ 7

MANUAL FOR COMPLEX LITIGATION (Fourth) ............................................................................ 21

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ........................................................................ 8, 9

Pursuant to Fed. R. Civ. P. 23, Plaintiff Lijana Shestopal ("Plaintiff"), by her counsel, respectfully submits her Motion For Final Approval Of Class Action Settlement (the "Motion"). For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the class action settlement as fair, reasonable, and adequate.

## INTRODUCTION

Plaintiff and Defendant Follett Higher Education Group, Inc. ("Follett") (collectively, the "Parties") have entered into a Settlement Agreement (the "Settlement Agreement" or "Settlement" or "Agreement") in the above-referenced matter. (Exhibit 1 attached hereto.) The Settlement Agreement—a product of extensive confirmatory discovery, numerous negotiations, and a full-day mediation with Retired Judge James F. Holderman—settles the dispute relating to Plaintiff's allegation that Follett sent unsolicited text messages to Plaintiff and the Class in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). (Dkt. No. 1.)

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for the Settlement Class. If approved, the Settlement will provide meaningful, substantial monetary relief to the Settlement Class in the form of a $3,500,000 non-reversionary, common fund (the "Settlement Fund"). As described in the attached declaration of Judge Holderman, this number was the result of a mediator's proposal by Judge Holderman and the product of extensive mediation led by Judge Holderman. (*See* Mediator's Declaration of Retired Judge James F. Holderman ("Holderman Decl."), attached hereto as Exhibit 3, ¶6.) As it currently stands, this Settlement will provide each approved Class Member approximately $107.66. Furthermore, this Settlement has not received a single objection.

As explained more fully below, the Settlement is fair, adequate, and reasonable, and should now receive final approval.

## BACKGROUND

On October 9, 2015, Plaintiff brought a putative class action against Follett in the United States District Court for the Northern District of Illinois, case number 1:15-cv-8980, alleging causes of action against Follett for purportedly sending unsolicited text messages to Plaintiff's wireless telephone and to the wireless telephones of the putative class members without their prior express written consent. (Dkt. No. 1.)

On December 1, 2015, Follett filed its Answer to Plaintiff's Complaint, denying that Follett had violated the TCPA. (Dkt. No. 14.) Follett also raised a number of affirmative defenses, including failure to state a claim, failure to establish Article III standing, and that its text messages were not, under the TCPA, "advertisements." (*Id.*) Follett further contended that Plaintiff and the Class Members consented to the text messages at issue, and are also subject to an arbitration agreement. (*Id.*)

Between December 2015 and March 2016, the Parties exchanged substantial information regarding Plaintiff's claims and Follett's defenses, including but not limited to Plaintiff's and other Class Members' alleged consent to receive text messages from Follett and agreements to arbitrate, the nature and scope of Follett's text messaging practices, and the size of the Class. (Decl. of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 2, ¶7.)

On March 8, 2016, the Parties held a mediation with Retired District Judge James F. Holderman at the office of JAMS located at 71 South Wacker Drive, Suite 3090, Chicago, Illinois 60606. (*Id.* ¶8.) Prior to the mediation, the Parties exchanged written mediation statements summarizing their respective positions as to the factual and legal issues in this action. (*Id.*) In addition, Follett also presented financial information that is material to the Parties' Settlement Agreement. (*Id.*) After a full day of arms-length negotiations and only with Judge Holderman's assistance, the Parties agreed to a Settlement Term Sheet which set forth the material terms of an

agreement to resolve the claims of Plaintiff and the Settlement Class. (*Id.* ¶9; *See generally* Holderman Decl.*) As part of the Settlement Term Sheet, the Parties agreed to engage in reasonable confirmatory discovery regarding the class size, date and number of text messages sent, identity of class members, method of transmitting text messages, and Follett's financial solvency. (Siprut Decl. ¶9.)

Between April 2016 and July 2016, Follett produced confirmatory discovery in the form of hundreds of documents amount to over 10GB of raw data, and hired an outside vendor to conduct data analysis in order to determine the size of the class and the number of text messages sent. (*Id.* ¶11.) Based on the analysis, Plaintiff determined that, between October 9, 2011 and December 24, 2015, approximately 1,360,561 unique mobile telephone numbers received text messages from Follett, and approximately 524,260 additional unique mobile telephone numbers may or may not have also received text messages from Follett, resulting in a class size of approximately 1,884,821 individuals (the "Class"). (*Id.*) Based on the results of the confirmatory discovery, between June 2016 and September 2016, the Parties engaged in numerous settlement negotiations in order to finalize the terms of the Settlement Agreement. (*Id.* ¶12.) Additionally, in August 2016, in order to determine the best practicable manner of effecting notice to the Class, Plaintiff requested the Settlement Administrator also analyze the confirmatory discovery. (*Id.*) After many exchanges of drafts and edits, and numerous conference calls, the Parties were able to agree to the form and content of a settlement agreement that was executed on September 15, 2016. (*See* Exhibit 1.)

On September 15, 2016, Plaintiff filed her Motion For Preliminary Approval Of Class Action Settlement, which would provide notice to the Class and allow each Class Member to submit a claim for a *pro rata* share of the Settlement Fund ($3,500,000), after deduction of

settlement administration and notice costs, Plaintiff's requested attorneys' fees award, and Plaintiff's requested incentive award. (Dkt. No. 38.) On October 6, 2016, the Court granted this motion, and set the Final Approval Hearing for March 23, 2016, at 2:00 p.m. (Dkt. No. 42.)[1]

Pursuant to the Court's Order, the Settlement Administrator caused a one-third page publication notice to appear in the November 21, 2016 issue of *People* magazine. (Declaration of Jay Geraci ("Geraci Decl."), attached hereto as Exhibit 4, ¶17.) The Settlement Administrator also purchased 5,023,944 internet banner impressions. (*Id.*) On November 21, 2016, the Settlement Administrator sent email notice to 1,549,275 Class Members with valid email addresses. (*Id.* ¶11.) On December 5, 2016, the Settlement Administrator mailed notice to 874 Class Members whose email addresses were not available. (*Id.* ¶13.) Finally, on December 19, 2016, the Settlement Administrator mailed notice to 129,160 Class Members whose email notice were not successfully delivered. (*Id.* ¶14.) On January 20, 2017, Plaintiff submitted her Motion For Attorneys' Fees, Costs, And Incentive Award. (Dkt. No. 58.)

As of the filing of this Motion, the Settlement Administrator has received 18,015 timely approved claims, 2 late claims, 23,794 invalid claims, 1,792 deficient claims, 36 requests for exclusion, and ***no objections***. (Geraci Decl. ¶¶20-22.) Plaintiff respectfully suggests that the Court allow the Settlement Administrator to mail deficiency letters to each of the 1,792 deficient claimants, and provide these claimants 30 days to cure their deficiencies. This Settlement is now poised for final approval. Accordingly, Plaintiff now submits her brief in support of the Settlement.

---

[1] Subsequently, on November 4, 2016 and November 17, 2016, respectively, the Preliminary Approval Order was amended two additional times due to clerical errors. (Dkt. Nos. 47, 54.)

## ARGUMENT

### I.   COMPONENTS OF THE SETTLEMENT.

#### A.   The Settlement Class.

The Settlement Class provisionally certified by this Court on November 17, 2016, is defined as:

> [A]ll individuals in the United States to whose wireless telephones Defendant, its affiliates, subsidiaries, or an agent or contractor on one of their behalves, sent a non-emergency text message through the use of automatic telephone dialing system, from October 9, 2011, up to and including December 15, 2015.

(Dkt. No. 54 at 2.)

#### B.   Benefits To Settlement Class Members.

Under the Settlement, each Settlement Class Member who submits an Approved Claim shall receive one *pro rata* share of the $3,500,000 Settlement Fund, after (i) the Notice and Administration Costs (approximately $499,887); (ii) Plaintiff's requested Attorneys' Fee Award (35% of the Fund *after* deduction of Settlement Administration Costs and Plaintiff's Incentive Award; approximately $1,048,989.55); (iii) reimbursement of out-of-pocket litigation costs ($8,531.38); and (iv) the Incentive Award ($3,000) have been deducted from the Settlement Fund (the "Net Settlement Fund"). Assuming this Court grants Plaintiff's requested attorneys' fees of $1,048,989.55, Plaintiff's requested reimbursement of out-of-pocket litigation costs of $8,531.38, and Plaintiff's requested incentive award of $3,000, Class Counsel estimates that the Net Settlement Fund will be equal to $1,939,592.07.[2] Accordingly, the 18,015 Settlement Class

---

[2] The gross settlement fund was deposited in an interest-bearing escrow account administered by the Settlement Administrator. To date, this escrow account has accumulated $2,147.72 in interest. At the time of distribution, this interest will be included in the Net Settlement Fund. (*See* Declaration of Jay Geraci Regarding Estimate Per-Claimant Recovery, Dkt. No. 60-1, at 2 n.1.)

Members that submitted timely approved claims will each receive approximately $107.66 – an outstanding result.[3]

### C. Incentive Award To Class Representative.

Subject to Court approval, Plaintiff requests a service award of $3,000 in recognition of her contributions to the Class, the time she spent assisting with the prosecution of this case, and the risk she incurred in commencing the action, both financial and otherwise. (Dkt. No. 58.)

### D. Attorneys' Fees And Costs.

Class Counsel requests total fees in the amount of 35% of the Fund after the deduction of notice and administration costs and the incentive award. Using the current administration costs of $499,887, Class Counsel's Fee Award would be $1,048,989.55 (($3,500,000 – $499,887 – $3,000) x 0.35 = $1,048,989.55). Importantly, however, this is not a provision of the Settlement. There is no agreement as to fees—*i.e.* no "clear-sailing" provision—consistent with recent Seventh Circuit jurisprudence. *Redman v. RadioShack Corp.,* 768 F.3d 622, 637 (7th Cir. 2014). Furthermore, this amount is in line the ratio articulated by the Seventh Circuit in *Redman.* 768 F.3d at 630: "(1) the fee to (2) the fee plus what the class members received." Here, the *Redman* ratio is 35.1% ($1,048,989.55 / ($1,048,989.55 + $1,939,592.07)), which is precisely in line with other recent cases in this District. *See, e.g., Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *13 (N.D. Ill. Mar. 2, 2016) (Gottschall, J.) (awarding fees with a *Redman* ratio of 34.8%).

In addition, the requested attorneys' fees ($1,048,989.55) constitute a 2.42 multiplier on Class Counsel's base lodestar ($432,750). (Siprut Decl. In Supp. Of Plaintiff's Mot. For Attorneys'

---

[3] If the Court provides the 1,792 deficient claimants 30 days to cure, each Approved Claimant's *pro rata* recovery may decrease marginally based on the number of deficient claimants curing.

Fees, Costs, And Incentive Award (Dkt. No. 58-1) ¶4.) Courts have approved multipliers of up to and beyond four (4). *See, e.g., Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (multiplier of 2.5); *In re Cenco, Inc. Sec. Litig.,* 519 F. Supp. 322, 327 (N.D. Ill. 1981) (multipliers of 4 and 2); *see also* 1 Alba Conte, *Attorney Fee Awards* § 2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multipliers of 5 or 10 times the lodestar."). Hence, the requested fees are also appropriate under the lodestar methodology. Additionally, Class Counsel seeks reimbursement of out-of-pocket litigation costs, in the amount of $8,531.38.

## II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23.

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(1) . . . ."). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), her appointment as class representative solely for the purposes of the Settlement, and appointment of her counsel as Class Counsel solely for the purposes of the Settlement.

Plaintiff requests that the Court, for the purposes of settlement, certify the Settlement Class defined above. As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### A.      Numerosity – Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("[A] plaintiff need not identify each class member or even provide an exact number of class members to satisfy that element.") (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2002). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that '[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) (Feinerman, J.) (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969)); *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) (granting class certification, distinguishing that "impracticable" does not mean "impossible," but rather extremely difficult and inconvenient).

In this case, approximately 1,884,821 individuals were sent text messages from or on behalf of Follett between October 9, 2011 and December 24, 2015. (Siprut Decl. ¶11.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

**B.      Commonality/Predominance –
Federal Rule Of Civil Procedure 23(a)(2) And 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001)

(commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

    a.      Whether Follett engaged in a pattern of sending unsolicited text messages;

    b.      Whether Follett sent, or caused to be sent, the text messages at issue;

    c.      The manner in which Follett compiled or obtained their list of cell phone numbers;

    d.      The method in which Follett sent, or caused to be sent, the text messages at issue;

    e.      Whether Follett's text messages constitute "advertisements" under the TCPA;

    f.      Whether recipients of Follett's text messages consented to the receipt of such text messages; and

    g.      Whether Follett thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 331-32 (N.D. Ill. 2006); *Chase Bank*, 2016 WL 806549, at *5 (N.D. Ill. Mar. 2, 2016) ("A proposed class satisfies Rule 23(b)(3) if 'the questions of law or fact common to class members predominate over any questions affecting only individual members . . . .'") (citation omitted). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all

recipients[.]" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318 (2014).

In this case, common questions predominate for the Settlement Class because Follett's alleged unlawful conduct presents common questions with regard to all members of the proposed Settlement Class. *See Holtzman,* 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."); *In re Synthroid Marketing Litig.,* 188 F.R.D. 287, 292 (N.D. Ill. 1999) (acknowledging that plaintiff's allegations of defendant's standardized conduct involved "'a common course of conduct that leads to injury of all the class members.'") (quoting *Toney v. Rosewood Care Ctr., Inc. of Joliet,* No. 98 C 0693, 1999 WL 199249, at *9 (N.D. Ill. Mar. 31, 1999)). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on *common* evidence of Follett's conduct. *Chase Bank,* 2016 WL 806549, at *4 (Feinerman, J.) ("Each class member suffered roughly the same alleged injury: recipient of at least one phone call or text message from Chase to her cell phone [in violation of the TCPA.]"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 491 (N.D. Ill. 2015) (Kennelly, J.) ("Each class member suffered the same alleged injury, namely, recipient of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent[in violation of the TCPA.]"); *Baxter v. Kawasaki Motors Corp.*, 259 F.R.D. 336, 343 (N.D. Ill. 2009) ("when the case involves standardized conduct towards the members of the class, predominance often is satisfied").

### C.     Typicality – Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality

requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, typicality is easily met. Plaintiff and the Settlement Class allege that they all received unsolicited text messages from or on behalf of Follett, and that Follett sent or had sent on its behalf the text messages in violation of the TCPA, thereby entitling to Plaintiff and the Settlement Class to actual or statutory damages, whichever greater. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. *Walgreen,* 311 F.R.D. at 491 ("Typicality is satisfied when the named plaintiff's claim and those of the class members have a common legal theory, even if there are some factual variations."); *Chase Bank,* 2016 WL 806549, at *4 ("Because 'typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members,' the fact that some class members . . . may have consented to the calls and alerts, or that some class members signed arbitration clauses extinguishing their TCPA claims, does not vitiate the typicality of the class representatives' claims.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 725 (7th Cir. 2011)). Accordingly, Plaintiff's claims are typical of the Settlement Class.

**D.      Adequacy Of Representation – Federal Rule Of Civil Procedure 23(a)(4).**

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy

requirement, class representatives must establish that they: "(1) [have] a sufficient stake in the outcome to ensure zealous advocacy, and [have] no claims antagonistic to or conflicting with the claims of other class members, and (2) [are] represented by qualified, experienced counsel." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding class counsel was adequate, stating if "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.").

Here, Plaintiff's interests are consonant with the interests of the Settlement Class— obtaining relief from Follett for its alleged unlawful transmission of text messages, and ensuring that Follett does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other members of the Settlement Class. (Siprut Decl. ¶21.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*See id.* ¶20; Siprut PC Firm Resume (attached as Exhibit A to Siprut Decl.).) Accordingly, Plaintiff and her counsel would adequately represent the proposed Class. *Walgreen*, 311 F.R.D. at 492 ("[C]ass counsel have performed satisfactorily on behalf of the class and have demonstrated their competence in representing the class's interests.").

### E. Superiority – Federal Rule Of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or

defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem,* 521 U.S. at 620).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class Members' claims. The burden and expense of individual prosecution necessitated by Follett's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief. In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.

## III. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("We also consider the facts "in the light most favorable to the settlement"); *Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee,* 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."); *Du Puy v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 519 F.2d 536, 541 (7th Cir. 1975) ("[G]eneral policy is in favor of settlement of litigation by compromise and settlement procedures"). Courts look upon the

settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199 (citing *Armstrong*, 616 F.2d at 315), and has identified several factors for analyzing whether a class action settlement should be given final approval including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (affirming finding that settlement was fair under similar six-factor analysis.); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002) (same).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) ("The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties'

respective legal rights"); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating this was a "necessary consequence of settlement"). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.* at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (emphasis original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A.     Strength Of The Case Measured Against The Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864. Plaintiff alleges that Follett violated the TCPA by sending unsolicited text messages to wireless telephone numbers. (Dkt. No. 1.) Plaintiff contends that Follett did so without prior express invitation, permission, or consent of the recipients. (*Id.*) Plaintiff thus claims that she and the Settlement Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate. (*Id.*)

Follett denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. Primarily, Follett contends that its text messages do not, under the TCPA, constitute "advertisements." (Dkt. No. 14.) If Follett was successful on this basis alone, its conduct would not be in violation of the TCPA. *See* 47 U.S.C. § 227(a)(5) (defining advertisement as "any material advertising the commercial

- 16 -

availability or quality of any property, goods, or services.")[4]. Additionally, Follett contends that Plaintiff and Class Members failed to state a claim, failed to establish Article III standing, consented to receipt of the text messages at issue, and are subject to arbitration. (Dkt. No. 14.)[5] The Class would not be able to recover anything if Follett succeeded with on any of these affirmative defenses. Clearly, one of the factors to be considered as to the fairness of a class action settlement is Follett's willingness and ability to mount such a vigorous defense.

As explained above, the Settlement allows Settlement Class Members to receive direct, monetary relief. While Plaintiff believes that her claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Follett were to prevail on its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a *pro rata* distribution of the Settlement Fund—approximately $107.66 per Approved Claimant—is a substantial and meaningful achievement. *Chase Bank,* 2016 WL 806549, at *7 ("The actual recovery per *claimant* is approximately $52.50. As some objectors note . . . that recovery is well

---

[4] *See, e.g., Payton v. Kale Realty, LLC,* 164 F. Supp. 3d 1050, 1061-63 (N.D. Ill. 2016) (text message claiming defendant to be one of 2013's top 100 places to work was not advertisement); *Dolemba v. Illinois Farmers Ins. Co.,* No. 15 C 463, 2015 WL 4727331, at *2-4 (N.D. Ill. Aug. 10, 2015) (call recruiting insurance salesmen was not advertisement); *Friedman v. Torchmark Corp.,* No. 12-cv-2837, 2013 WL 4102201, at *5 (S.D. Cal. Aug. 13, 2013) (call inviting plaintiff to attend recruiting webinar was not advertisement).

[5] *See, e.g., Frausto v. IC System, Inc.,* No. 10 CV 1363, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011) (plaintiff expressly consented to receiving debt collection calls when he provided his phone number in applying for an account with an electronic payment service); *Green v. DirecTV, Inc.,* No. 10 CV 117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (plaintiff expressly consented to receiving fraud-alert notification calls when she provided her phone number to a consumer reporting agency as the preferred manner for contacting her for verification purposes); *Murphy v. DCI Biologicals Orlando, LLC,* No. 6:12-cv-1459, 2013 WL 6865772, at *5-8 (M.D. Fla. Dec. 31, 2013) (plaintiff expressly consented to receiving text messages when plaintiff voluntarily provided his phone number to defendant via filling out defendant's "new donor information sheet," where the sheet stated that its purpose was to "process" new donors).

below the $500 statutory recovery available for each call or text. However, the recovery falls well within the range of recoveries in other recent TCPA class actions.") (emphasis original) (internal citations omitted); *Walgreen,* 311 F.R.D. at 489 ("It is true that thirty dollars per claimant is substantially less than the $500 statutory recovery available for each unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that."); *In re Capital One Tel. Consumer Prot. Litig.,* 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (granting final approval where each claimant received $34.60); *Hashw v. Dep't Stores Nat'l Bank,* 182 F. Supp. 3d 935, 944-45 (D. Minn. 2016) (granting final approval where each claimant received approximately $33.20); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1043-44 (S.D. Cal. 2015) (granting final approval where each claimant received approximately $13.75). Accordingly, the Settlement provides a tangible benefit to all those affected by Follett's alleged violation of the TCPA.

**B.    The Complexity, Length, And Expense Of Continued Litigation.**

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties, for instance, would examine a number of Follett's current and former employees, as well as employees and agents of Follett's subsidiaries, affiliates, and other third-parties. Follett would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on: (a) whether Follett's text messages constituted "advertisements" under the TCPA; (b) Plaintiff and individual Class Members' alleged consent to receipt of text messages; (c) Plaintiff and individual Class Members' alleged lack of standing; and (d) whether Plaintiff and individual Class Members are subject to an arbitration agreement. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues,

evidentiary hearings, and further discovery and the gathering of evidence and witnesses. Such substantial risks and expenses are otherwise avoidable if the Settlement is approved.

### C.     The Settlement Class' Reaction And Lack Of Opposition To The Settlement.

Of the approximately 1,884,821 Settlement Class Members, 47,892 individuals have submitted claim forms, 18,015 of which have been verified as valid claims. (Geraci Decl. ¶20.) The resultant claims-rate in this Settlement is approximately 2.54% (47,892 / 1,884,821), and approximately 37.62% of these claims being valid (18,015 / 47,892). This claims-rate is in line with other recent TCPA class action settlements.[6]

Further, despite a robust notice procedure involving direct notice via mail & email, *and* publication notice via *People* magazine and internet banner, only *36* individuals have opted out of the Settlement, and ***zero*** individuals have objected the Settlement. (*Id.* ¶¶21-22.) The resultant opt-out percentage is *extremely low*, ***0.001909995%*** (36 / 1,884,821), and the resultant objection percentage is, of course, ***zero***. Courts, including this one, routinely find "extremely low percentage[s] of opposition favor[] a finding that the settlement is fair, reasonable, and adequate." *Chase Bank,* 2016 WL 806549, at *9 (Feinerman, J.); *In re Capital One Tel. Consumer Prot. Litig.,* 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (Holderman, J.) (similar); *In re Sw. Airlines Voucher Litig.,* No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.) (similar), *aff'd and modified on other grounds,* 799 F.3d 701 (7th Cir. 2015); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (St. Eve, J.) (similar); *In re*

---

[6] *See, e.g., Allen v. JPMorgan Chase Bank, N.A.,* No. 13-cv-80285, Dkt. No. 98 at 2 (N.D. Ill. Oct. 21, 2015) (4.05% claims-rate); *Wilkins v. HSBC Bank Nevada, N.A.,* No. 14 C 190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (3.16% claims-rate); *Rose v. Bank of Am. Corp.,* No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (2.95% claims-rate); *Walgreen,* 311 F.R.D. at 493 (2.51% claims-rate); *Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (1.90% claims-rate); *Chase Bank,* 2016 WL 806549, at *3 (1.08% claims-rate); *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.,* No. 3:14-CV-00645-ST, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (0.08% claims-rate).

*Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (Pallmeyer, J.) (holding that the fact that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

### D. Class Counsel's Opinion.

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous cases. (Siprut Decl. ¶20.) *In re Capital One,* 80 F. Supp. 3d at 792 (Holderman, J.) ("The court accepts that Class Counsel in this case are experienced litigators . . . and that they strongly support the settlement . . . this factor weighs in favor of approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Class Counsel believes that the Settlement confers substantial benefits upon the Settlement Class and meets the class-certification requirements of Rule 23. (Siprut Decl. ¶¶22-24.) Class Counsel estimates that the 18,015 Settlement Class Members that submitted timely approved claims will each receive approximately $107.66 – this represents an excellent payout in comparison to other recent TCPA settlements.[7] *See, e.g., Chase Bank,* 2016 WL 806549, at *7 (granting final approval where per-claimant recovery was approximately $52.50); *Walgreen,* 311 F.R.D. at 489 (granting final approval where per-claimant recovery was approximately $30); *In re*

---

[7] If the Court permits the 1,792 deficient Claimants 30 days to cure, and if *all* 1,792 deficient Claimants successfully cure their claims, then each Approved Claimant would *still* receive $97.92.

*Capital One,* 80 F. Supp. 3d at 790 (granting final approval where per-claimant recovery was $34.60). Class Counsel believes this is an outstanding result which is further underscored by the Settlement Class's lack of opposition to the Settlement. After weighing the merits of the Settlement Class's claims along with the risks and potential rewards of further litigation as compared to the Settlement, Class Counsel believes the Settlement should be approved. (Siprut Decl. ¶24.)

### E.    The Stage Of The Proceedings And The Amount Of Discovery Completed.

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. The amount of *formal* discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted); *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged. *First*, the Parties formally and informally exchanged information critical to evaluating the strength of Plaintiff's contentions and Follett's defenses. *Second,* pursuant to the Settlement Term Sheet negotiated at mediation, Class

Counsel requested, and Follett provided, information concerning the identities & size of the Class, the methods through which text messages were sent, and how Class Members' phone numbers were obtained. *Third*, Class Counsel engaged with the Settlement Administrator to determine the best manner to effect notice and whether effecting notice on the Class was practicable. Class Counsel was thus well-equipped not just to make a reasonable and informed decision as to whether to settle on behalf of the Class, but also what the terms of such settlement would be. (Siprut Decl. ¶¶7-8, 10-12.)

## IV. THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS.

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Settlement Class Members as possible who would be bound by the Settlement. In this case, the Settlement Administrator—KCC Class Action Services, LLC—provided direct notice via mail and email, and publication notice via print and internet banner advertisements. (Geraci Decl. ¶¶11-17.) Specifically, on November 21, 2016, the Settlement Administrator emailed notice to each of the 1,549,275 Class Members with valid email addresses. (*Id.* ¶11.) Of these 1,549,275 email notices, 146,745 were undeliverable. (*Id.* ¶12.) The Settlement Administrator determined U.S. postal mailing addresses for 129,160 of these 146,745 Class Members and mailed postcard notices to these addresses on December 19, 2016. (*Id.* ¶14.) Additionally, on December 5, 2016, the Settlement Administrator mailed postcard notices to the 874 Class Members who had U.S. postal mailing addresses but not email addresses. (*Id.* ¶13.)[8]

---

[8] Since mailing the Notice Packets to the Class Members, the Settlement Administrator has received 2,288 Notice Packets returned by USPS with forwarding addresses. The Settlement Administrator caused Notice Packets to be re-mailed to all 2,288 forwarding addresses. (Geraci Decl. ¶15). In addition, since mailing the Notice Packets to the Class Members, the Settlement Administrator received 16,767 Notice Packets returned by USPS with undeliverable addresses. The Settlement Administrator found updated addresses for 9,351 of these Class Members and re-mailed Notice Packets to these updated addresses. (*Id.* ¶16.)

On or about November, 2016, the Settlement Administrator caused an one-third page notice to be published in the November 21, 2016 issue of *People* magazine. (*Id.* ¶17.) In addition, internet banner advertisements were displayed on a variety of websites between October 21, 2016 through December 6, 2016, delivering 5,023,944 impressions to cell phone owners 18 years of age or older. (*Id.*)

This notice plan, which was approved by the Court on October 6, 2016 (Dkt. No. 42), provided the best notice practicable to apprise the Settlement Class of the pendency of this action. Class Members only needed to fill-out a one-page, claim form that asks for basic information (Geraci Decl. Ex. I). *See Walgreen*, 311 F.R.D. at 499 ("[T]he claim form used in this case is short and direct."). The notice afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Court's Second Amended Preliminary Approval Order. (Dkt. No. 54 at 3.) Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## **CONCLUSION**

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval of the Settlement.

Dated: March 16, 2017                                        Respectfully submitted,

                                                             By: */s/ Joseph J. Siprut*

                                                             Joseph J. Siprut
                                                             *jsiprut@siprut.com*
                                                             Ke Liu
                                                             *kliu@siprut.com*
                                                             **SIPRUT PC**
                                                             17 N. State Street

Suite 1600
Chicago, Illinois  60602
Phone: 312.236.0000
Fax: 312.878.1342
**www.siprut.com**

*Counsel for Plaintiff*
*and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing

**Plaintiff's Motion For Final Approval Of Class Action Settlement** was filed this 16th day of

March 2017 via the electronic filing system of the Northern District of Illinois, which will

automatically serve all counsel of record.


                                                 */s/ Joseph J. Siprut*